GEORGE W. MARSH, SECRETARY OF STATE, ET AL. V. ORVILLE M. STONEBRAKER.

FILED FEBRUARY 17, 1904. No. 13,498.

1. **Statutes:** TITLE TO. Chapter 124 of the laws of 1903 does not, in terms, vest title and ownership of the statutes therein mentioned in the officers to whom said statutes are to be delivered by the secretary of state.

2. **Act of Legislature:** CONSTITUTIONALITY. An act of the legislature will not be declared unconstitutional and void, on the presumption that it will be used as a basis to assert an unjust or illegal claim to the property of the state.

3. ———: ———: PUBLICATION OF STATUTES. The legislature is not prohibited by any provision of the constitution from granting to

a person the right to publish the statutes of this state, and making such statutes *prima facie* evidence of the law, nor from purchasing such number of copies thereof as the legislature may deem necessary for the use of its officers.

ERROR to the district court for Lancaster county: ED-WARD P. HOLMES, JUDGE. *Reversed and dismissed.*

*F. N. Prout, Attorney General,* and *Norris Brown,* for plaintiffs in error.

*Frank M. Hall* and *C. C. Marlay, contra.*

DUFFIE, C.

At its last session the legislature passed an act (Laws, 1903, ch. 124) in the following words:

*"Be it Enacted by the Legislature of the State of Nebraska:*

"Sec. 1.    That J. E. Cobbey is authorized to prepare a statute of the state of Nebraska to be prepared and published without cost to the state.

"Sec. 2.    Said statute shall contain the constitutions of the state and such other preliminary matter as has hitherto been published in the statutes and such matter as is usually published in first class statutes. All the public laws now in force or that shall be passed by this legislature arranged in chapters with proper headings and titles, the whole thoroughly indexed shall be annotated on the same plan as the 'Annotated Code' of 1901 published by him and published in two volumes.

"Sec. 3.    The said statute shall be published as soon after the adjournment of this legislature as is practicable with first class work; and five hundred (500) sets of two volumes each shall be immediately delivered to the secretary of state to be distributed by him to members of this legislature and state officers as provided by law. The state shall pay therefor the sum of nine dollars ($9) per set of two volumes each.

"Sec. 4.    The said statute shall be received in all the courts of the state as *prima facie* evidence of the law."

September 28, 1903, the defendant in error commenced this action in the district court for Lancaster county alleging, among other things, "that under and in pursuance of said act the said J. E. Cobbey had in preparation said statute; that the same will be completed, printed and published and ready for delivery in a short time and that it is the intention of the said J. E. Cobbey to deliver 500 sets of two volumes each to the secretary of state, and it is the intention of said secretary of state to receive and distribute the same for the state of Nebraska to the members of the legislature of said state and the said officers thereof, in compliance with section 3 of said act, unless restrained by an order of this court from so doing, and that, when said statutes are so by the said J. E. Cobbey delivered to the secretary of state, it is the intention of said auditor to draw his warrant upon the treasurer of the state of Nebraska for the payment of the same for the sum of $4,500, unless restrained by an order of this court from so doing." It is further alleged that "the act is unconstitutional in that section 4, article III of the constitution, fixes the compensation of members of the legislature at the rate of $5 a day during their sitting, and 10 cents for every mile they shall travel in coming to and returning from the place of meeting of the legislature; provided, however, that they shall not receive pay for more than 60 days at any one sitting, nor more than 100 days during the term, and that neither members of the legislature nor employees shall receive any pay or perquisites other than their salary and mileage: That it further infringes section 15, article III of the constitution, which provides that the legislature shall not pass local or special laws granting to any corporation, association or individual any special or exclusive privilege, immunities or franchise whatever, and that the act grants to J. E. Cobbey a special privilege in the matter of publishing the Nebraska statutes." For these reasons an injunction was asked against the plaintiffs in error, enjoining them from receiving and distributing or paying for said statutes. A demurrer to this peti-

tion was overruled by the district court, and, plaintiffs in error having elected to stand upon their demurrer, a perpetual injunction was granted as prayed in the petition; and the case has been brought here on error.

The theory upon which the defendant in error seeks to sustain this action is, that the legislature, in the enactment of this statute and in the appropriation which was made to pay for the books, contemplated and intended that absolute title to them should pass to the members of the general assembly. The appropriation bill contains the following: "To pay for five hundred copies of the statutes for state officers and the present members of the legislature, the members of the next legislature and the counties of the state, $4,500." It is urged in argument that, unless it was intended to give the members of the legislature which passed the act absolute title to the books received by them, it would be unnecessary to provide for the delivery of another copy of the books to the members of the next legislature, and it is insisted that, if title to the books is vested in the members of the legislature by the terms of the act and of the appropriation, it is a perquisite within the meaning of the constitutional provision above referred to. On the other hand, the attorney general insists that title to these statutes does not pass under the act, that it was the purpose and intent of the legislature to provide each of the members with a copy of the statute to be used during their term of office, the better to qualify themselves for the performance of the duties imposed upon them as members of the legislature.

We apprehend that no objection can be taken to furnishing the members of the legislature and other state officers with copies of the general statutes of this state to be used during their terms of office. The executive, judicial and legislative officers must each alike have access to the general laws of the state, to enable them to perform their official duties in an intelligent manner, and it is as necessary that their offices be supplied with these statutes as with office furniture and other supplies. As we understand

from counsel for defendant in error, it is not contended that there is any constitutional objection against the state furnishing the use of these statutes to the members of the general assembly and other state officers, but it is insisted that the members of the legislature have no right to take these statutes from the capitol to their homes, or to have the use of them at any time except when the legislature is in session. With this contention we can not agree. No one but the chief executive can know when a special session of the legislature may be called, and, until the time when a member's successor is elected and qualified, he may be required on any day to resort to the capitol to consider some important interest of the state. During all of his term, he is entitled to the use of the statutes of the state as one of the incidents of the office which he holds, and as a means of informing himself in relation to his duty, when called upon to act officially as a lawmaker for the state. There is nothing in the terms of the act, as we read it, which pretends to vest in the officers furnished with these books an absolute title thereto, or anything more than the use thereof during their term. No party connected with this case is asserting title to these statutes under this act and, until some officer who is to be supplied claims title to the books delivered to him, and neglects and refuses to deliver them to his successor in office, we do not know how the question of title can be tried and determined. We can not in this case more than in any other determine a question in advance of a controversy. That the state has a right to purchase these statutes is not a question open to discussion. That question was before the court in *State v. Wallichs,* 12 Neb. 234, and it was there said:

"Whether this number were reasonable, or prodigal, under all the circumstances that should affect it, is not to be here considered. The legislature saw fit to designate the number 'required by the state,' and that designation is not subject to review. That is a matter with which neither the respondent nor this court has anything whatever to do."

Until the question of title to these books arises in a proper action, and between proper parties, we are not called upon to decide the question, or to give our views in advance of an actual case properly instituted. We can not declare a statute void upon the assumption that some one, at some future time, may use it as a basis for asserting an unjust claim to property delivered to him as a state official, and upon the presumption that the officers of this state will not surrender to the state, or to their successors in office, the property received from the state to enable them to intelligently perform their official duties if the property should, under the law, be surrendered either to the state or to their successors. The objection that this statute is obnoxious to the provision of our constitution against the granting of any special or exclusive privilege is not, in our judgment, well taken. Mr. Cobbey is the only party having these books. If the state wishes to purchase, it must purchase from him. It is true that there is another statute published, and which the state could purchase from another party, but we know of no prohibition resting upon the legislature to determine, for itself, which of these statutes it will buy for the use of the state officers. If this purchase from Mr. Cobbey is granting to him a special or exclusive privilege because he is the only person owning this particular kind of a statute, and the legislature is prohibited from dealing with him on that account, then it must refuse to deal with anyone who is the exclusive possessor of a certain kind of property, however great the need of the state may be for the use of such property. The state having, as we think, an undoubted right to make this purchase, it is not for the courts to interfere or to take any action in the matter. If at some future time, because of a claim of ownership made to these statutes by any officer to whom they may be delivered, the question of title shall arise, that question will be determined; together with the other question argued as to whether, if title does pass to the recipient, it constitutes a perquisite.

Because the decree of the district court prohibits the secretary and auditor of state from carrying into effect a law which, upon its face, is valid, we recommend that its judgment be reversed and the cause dismissed.

LETTON and KIRKPATRICK, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause dismissed.

REVERSED.