STATE, EX REL. JOSEPH E. COBBEY, RELATOR, v. GEORGE C. JUNKIN, SECRETARY OF STATE, RESPONDENT.

FILED MARCH 5, 1908. No. 15,549.

1. **Statutes: CONSTRUCTION.** House roll 57, adopted by the legislature of 1907, examined, and *held* to be free from doubt or ambiguity.

2. ———: ———. Its provisions are clearly within the scope of legislative power.

3. ———: ———. It confers no discretion upon the officers of the state as to the number of volumes of the statutes to be accepted thereunder.

4. **Mandamus: EVIDENCE.** Evidence examined, and *held* sufficient to entitle relator to a peremptory writ of mandamus.

ORIGINAL application for a writ of mandamus to compel respondent, as secretary of state, to receive 400 copies of Annotated Statutes of Nebraska, as required by law. *Writ allowed.*

*J. E. Cobbey, pro se.*

*W. T. Thompson, Attorney General,* and *W. B. Rose, contra.*

FAWCETT, C.

The legislature of 1907 passed, and the governor duly approved, the following act:

"HOUSE ROLL NO. 57.

"An act to purchase a supply of statutes for the use of the state, and making an appropriation therefor.

*"Be it enacted by the Legislature of the State of Nebraska:*

"Section 1. That the compiler of the Annotated Statutes of Nebraska is authorized to deliver to the secretary of state 400 copies of the Annotated Statutes of Nebraska for the use of the state. Said statutes to be brought down to date after adjournment of the Legislature and to equal in quality the Annotated Statutes of 1903.

"Section 2. For the purpose of carrying into effect the provisions of this act there is hereby appropriated out of any money in the state treasury not otherwise appropriated the sum of $3,600, payable on the delivery of the statutes to the secretary of state. The auditor is hereby directed to audit such bill and draw his warrant on the state treasurer for the amount thereof." Laws 1907, ch. 193.

Relator alleges that he was the author of the Annotated Statutes of 1903; that at the time of the passage of house roll 57 he was the only person in the state of Nebraska publishing, or authorized to publish, statutes known as the "Annotated Statutes of Nebraska"; that acting under the authority of this law, and accepting the same as a

contract, he prepared the statutes as therein provided, and tendered 400 copies of the same to the secretary of state, as provided for in the act, and demanded that he receive and receipt for the same, which the secretary of state, the respondent herein, refused to do. Whereupon, by leave, of court, this action for mandamus was brought as an original action in this court.

Respondent admits the passage and approval of house roll No. 57, admits that relator tendered 400 copies of his annotated statutes, and that he, as secretary of state, refused to receive the same, admits that relator has a copyright of the statutes which he offered to deliver, which is entitled "Cobbey's Annotated Statutes of Nebraska," denies every allegation in relator's petition and in the alternative writ, except such as are specifically admitted, qualified or explained in his answer, alleges that at the time of the authorization, publication and copyrighting of the book referred to as "Cobbey's Annotated Statutes of Nebraska," and at the present time, there was and is an annotated compilation of the statutes of Nebraska other than the statutes of relator, which was known and recognized by the legislature of 1907 and the public generally as the "Annotated Statutes of Nebraska"; that the compiler of said last named statutes has prepared and printed an edition of said statutes that, as respondent believes, complies with all the requirements of the act of the legislature of 1907, and that said compiler, prior to the commencement of this action, was and now is ready, able and willing to comply with the terms of said act, and offered to deliver and now offers to deliver to respondent 400 copies, or any less number, of his annotated statutes, being brought down to date, and equal in quality to the annotated statutes of 1903, and that respondent verily believes that said statute complies with the said act of 1907; that the compiler of said statutes offers his statutes at the price of $2.50 a copy; that said statutes are in every respect equal in quality to the statutes of relator; that said statutes are preferred by a large number of the ex-

ecutive officers of the state, to whom the statutes when
purchased would be distributed, and by whom they would
be used; that by the terms of the act of 1907 respondent
was authorized, within his official discretion, to purchase
for the use of the state a supply of any annotated statutes
for the state of Nebraska, not exceeding 400 in number,
prepared in compliance with said act, or of two or more
annotated statutes of Nebraska that come within the re-
quirements of said act; that numerous state officers have
already purchased and supplied themselves with the "An-
notated Statutes of Nebraska" other than the "Cobbey's
Annotated Statutes of Nebraska" at a cost to the state of
$2.50 a volume, because they preferred said statutes; that
respondent is informed and believes that there is no ne-
cessity for purchasing 400 volumes at this time for the
use of the state, or for its use during the present bien-
nium. Wherefore respondent submits whether he ought
to purchase 400 copies of Cobbey's Annotated Statutes of
Nebraska at a cost to the state of $3,600.

We deem it unnecessary to refer, to any great extent, to
the evidence in this case, as the record discloses very little
that is not already well known by every judge and lawyer
in the state. The evidence shows that there are two
statutes now in use, and which have been in use since
1903—one prepared by relator, known as "Cobbey's An-
notated Statutes of Nebraska," the other prepared by Mr.
H. H. Wheeler, known and designated as "Compiled Stat-
utes of Nebraska." These two statutes are so generally
known by all persons who have occasion to use the statutes
of this state that we do not see how there is any possibility
of one being mistaken for the other. Whenever a refer-
ence is found in any opinion, brief or other document to
the "Annotated Statutes," it is known at once that such
reference means the statutes prepared by relator; and,
when any such reference is made to the "Compiled Stat-
utes" of Nebraska, it is known at once that such reference
means the statute prepared by Mr. Wheeler. In 1903 re-
lator was authorized to prepare a statute which should

be annotated upon the same plan as the annotated code published by him in 1901, said statute to be published in two volumes, for which relator was to receive $9 a set of two volumes. Relator proceeded to prepare the statutes in accordance with said act of the legislature, and, after litigation which was decided by this court in *Marsh v. Stonebraker,* 71 Neb. 224, he was permitted to deliver the statutes so published, and collected his pay therefor. In 1905 the legislature recognized this two volume statute as the "Annotated Statutes," and authorized a supplement to be prepared on the same general plan, bringing "The Annotated Statutes" down to date, and relator contends that such recognition constituted a legislative sanction and interpretation of the use of the words "Annotated Statutes." However that may be, the supplement was prepared and is now in general use. During all of those times Mr. Wheeler was publishing the "Compiled Statutes" of Nebraska in the same manner as it is now being published. With these two statutes in general circulation, and the difference between them, both as to quality and price, well known, the legislature of 1907 passed house roll No. 57, in which they used the term "Annotated Statutes of Nebraska," instead of "Cobbey's Annotated Statutes of Nebraska." Because of the omission of the name of relator in connection with the name of his statutes, respondent claims that he is in doubt as to which statutes was meant. The conviction is forced upon us that this doubt is more imaginary than real. It is too unreasonable for serious consideration that the legislature, in passing house roll No. 57, and appropriating $3,600 for the purchase of 400 copies of a statute, had any thought of the "Compiled Statutes" published by Mr. Wheeler, consisting of a single volume, which could be purchased for $2.50 a volume. The reference to "Annotated Statutes," and the requirement that they should be equal in quality to the "Annotated Statutes of 1903," together with the designation of the number of copies as 400 and the fixing of the amount of the appropriation at $3,600, render it clear be-

yond a possibility of a doubt that the legislature had in mind the statutes of 1903 prepared by relator and the preparation by relator of the statutes contemplated by house roll 57. While some of the state officials may prefer the Compiled Statutes, as alleged by respondent, it is idle to claim that such statute is equal in quality to the Annotated Statutes prepared by relator. To one desiring only to examine the statutes without any reference to the annotations, it may be conceded that the Compiled Statutes, being in one volume, would be more convenient, but the purpose of the legislature was not simply to provide for a compilation of the statutes. It is evident that it had in mind, as an important consideration, the valuable annotations to the statutes prepared by relator. The fact that certain state officials may prefer the Compiled Statutes, or that respondent believes that there is no necessity for purchasing 400 volumes, or whether or not the legislature acted wisely in the passage of house roll No. 57 are all matters with which neither the court nor respondent has any concern.

In *State v. Wallichs*, 12 Neb. 234, we said: "According to our understanding of the provisions above quoted, the only rational conclusion to be drawn from them is that the legislature, exercising an undoubted inherent discretion, intended to supply the state with a definite number of copies, to be paid for at once upon delivery, and sufficient to meet not only the present, but also the future demands for a reasonable length of time. And the designation of this number was not left in doubt, to be determined by the uncertain discretion of the respondent, or any other state officer, but is expressed clearly enough, as we think, in the last of the above quotations. Whether this number were reasonable, or prodigal, under all the circumstances that should affect it, is not to be here considered. The legislature saw fit to designate the number 'required by the state,' and that designation is not subject to review. That is a matter with which neither the respondent nor this court has anything whatever to do. We are to ad-

minister the laws as enacted, in accordance with their evident design, leaving the responsibility with the legislature where it rightly belongs." In *Marsh v. Stonebraker, supra, State v. Wallichs, supra,* was quoted from and approved. In the opinion Mr. Commissioner DUFFIE, speaking for the court, said: "The objection that this statute is obnoxious to the provision of our constitution against the granting of any special or exclusive privilege is not, in our judgment, well taken. Mr. Cobbey is the only party having these books. If the state wishes to purchase, it must purchase from him. It is true that there is another statute published, and which the state could purchase from another party, but we know of no prohibition resting upon the legislature to determine, for itself, which of these statutes it will buy for the use of the state officers. * * * The state having, as we think, an undoubted right to make this purchase, it is not for the courts to interfere or to take any action in the matter."

What we said in those two cases will apply with equal force here. The legislature, acting clearly within its powers, passed house roll No. 57. Both the record and common knowledge on the part of all parties concerned conclusively establish the fact that the legislature intended an annotated statute to be prepared by relator. Relator has prepared a statute in accordance with the act. He has duly tendered same to respondent, and is now ready to deliver the full 400 volumes in accordance with the legislative enactment, and it is the duty of respondent to receive the statutes tendered. Respondent makes no point in his answer that he would have any difficulty whatever in determining to whom these statutes should be delivered after they are received by him. That point was suggested on the argument at the bar (respondent has not filed any brief), but we think it is without merit. The records in his office will doubtless advise him, if he does not already know, how such statutes have been distributed in the past. These distributions have been satisfactory heretofore, and we have no doubt they will be hereafter.

We recommend that a peremptory writ of mandamus issue as prayed in relator's petition.

CALKINS and ROOT, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, it is ordered that a peremptory writ of mandamus issue as prayed in relator's petition.

WRIT ALLOWED.