HIRAM D. UPTON ET AL. V. GEORGE BETTS ET AL.

FILED MARCH 7, 1900. No. 9,152.

1. **Quia Timet:** EQUITABLE LIEN. In an action *quia timet*, where the only issue was the validity of a deed under which defendant asserted title, a decree in favor of the plaintiff will not pre-

clude the defendant from afterwards asserting an equitable lien for money paid by him in discharging a valid mortgage on the property.

2. **Res Adjudicata.** A matter in issue covered, either generally or specifically, by the decree of the court can not be again litigated without a modification or vacation of that decree.

3. **Junior Incumbrancer: EQUITABLE LIEN: BONA FIDES.** A junior incumbrancer who claims priority over an elder equitable lien must allege and prove that he acted in good faith in the transaction, and that he paid out the full amount secured by his lien in ignorance of the prior equity.

4. **Findings: PLEADINGS.** The findings of the court must respond to the issues raised by the pleadings in the case.

5. **Evidence.** Evidence examined, and found to support the findings and decree of the court.

ERROR from the district court of Saline county. Tried below before HASTINGS, J. *Affirmed.*

*F. I. Foss, W. R. Matson* and *C. E. Holland,* for plaintiffs in error:

A mortgage recorded prior to an entry of judgment which was a lien upon the property took precedence of the judgment lien. See 1 Jones, Mortgages, sec. 461; *Jackson v. Dubois,* 4 Johns. [N. Y.], 216; *Dunwell v. Bidwell,* 8 Minn., 18; *Goodenough v. McCoid,* 44 Ia., 659; *Lambertville Nat. Bank v. Boss,* 13 Atl. Rep. [N. J.], 18.*

As between a mortgage and a judgment rendered in a county different from that in which the land was, priority was determined by priority of registration in the county where the land is situated. See *Firebaugh v. Ward,* 51 Tex., 409; *Gray v. Patton,* 13 Bush [Ky.], 625.

Under the statute, which provided that a mortgage recorded within a certain time after its date, should take effect, as between the parties, from its date, a judgment recovered subsequently to the date of a mortgage, and before the recording of it, bound only the equity of redemption, and was subject to the mortgage, without re-

*This case does not appear in the New Jersey reports.—REPORTER.

gard to the question of actual notice, if the mortgage was subsequently recorded within the time prescribed by law. See *Knell v. Green Street Building Ass'n*, 34 Md., 67.

The limit of inquiry necessary in any case was that required by the use of reasonable diligence. See *Passumpsic Savings Bank v. National Bank of St. Johnsbury*, 53 Vt., 82; *Vredenburgh v. Burnet*, 31 N. J. Eq., 229; *Babcock v. Lisk*, 57 Ill., 327; *Heaton v. Prather*, 84 Ill., 330.

As a general rule a final decree could not be amended after the term in which it is ended. See 5 Am. & Eng. Ency. Law, 380, note 2; *Pope v. Hooper*, 6 Nebr., 178; *Bramlet v. Pickett*, 12 Am. Dec., 350, 2 A. K. Marsh. [Ky.], 10.

A mandate was not necessary to the finality of a judgment. Powell, Appellate Proceedings, pages 284, 287, showed the purpose of a mandate. See, also, Powell, page 345, as to the use of a mandate.

The universal rule was acknowledged to be that where any question of fact, however slight, was involved, parties are entitled to have the jury pass upon such questions. See *Johnson v. Missouri P. R. Co.*, 18 Nebr., 690.

*James W. Dawes* and *Joseph R. Webster*, for the defendant in error, Sims, argued that the radical question was, Had this court still jurisdiction of the cause after the decree of December 14, 1888, to modify it, and send the cause back for trial on another issue? If it then had jurisdiction, then the decree of December 14, 1888, was not in fact final. This court had full and complete jurisdiction of the cause of *Betts v. Sims*, to modify the decree, and remand the cause for trial on the new issues formed. The mortgages were taken *lis pendens*, and were barred by result of that controversy. There are in this state no statutory or constitutional provisions defining when jurisdiction of this court, once acquired, ceases. Every authority cited by plaintiffs in error, on the power of courts to modify their judgments after the term at which they are rendered (save two), related to modification of judgments made, attempted or sought in courts not of

last resort where a somewhat different rule prevailed. In 156 U. S., 267, the court held it had power till expiration of 1893 (July, 1894) term to modify its decree of April 3, 1893 (October term of 1892), but could not do so in 1895, more than two years after its rendition. On page 25 counsel quoted from brief of counsel in *Longworth v. Sturgis*, 6 O. St., 147, by some inadvertence citing it as, and probably supposing it to be, the language of the court. This was not adopted as a part of its opinion. The court, in that case, refused to modify its judgment, or yield to a bill of review, because mandate had been sent down and filed in the lower court, new parties brought in, new issues made, and the cause was in due course of adjudication below.

SULLIVAN, J.

This action was brought by Hiram D. Upton to foreclose a mortgage on real estate in Saline county. Ernest C. Holland answered, setting up a junior mortgage on the premises described in the petition. F. L. Sims, who is the fee owner of the property, filed an answer claiming title through a sale under a decree foreclosing an equitable lien in favor of himself and antedating the mortgage of both Upton and Holland. To this answer the mortgagees replied. The reply of Holland was a general denial, while that of Upton was a general denial, coupled with the statement that he had taken his mortgage on the faith of a decree rendered by this court in an action between George and Eliza Betts and Sims involving the ownership of the land here in controversy. The trial court found the issues in favor of Sims, and rendered a decree quieting his title. Upton and Holland filed a joint motion for a new trial, and they have also joined in the petition in error. The substance of their contention is that while the lien upon which Sims grounds his title was anterior to the mortgages, it was a secret lien and, therefore, not entitled to priority.

It appears from the record that George Betts was at

one time the owner of the property; that he occupied it as a homestead; that Charles Bidleman had a valid mortgage thereon; that Sims purchased and paid for the land and was given possession of it; that he then paid off the Bidleman mortgage and caused it to be released of record; that afterwards Betts and wife sued Sims to quiet their title to the land, on the theory that it was a family homestead, and that, Mrs. Betts not having joined with her husband in the deed through which Sims claimed title, the deed was void; that the action was tried in the district court, and that the trial resulted in a finding and judgment in favor of Sims; that the cause was appealed to this court, where, on December 14, 1888, a decree was rendered in favor of George and Eliza Betts, quieting their title and awarding them possession and costs; that after the adjournment of the term at which the decree was rendered, and after the expiration of the time limited by the rule for filing a motion for a rehearing, Sims asked and obtained in this court leave to file an amended answer setting up the facts in regard to the payment by him of the Bidleman mortgage; that after such answer was filed, the cause was remanded to the district court, where a trial was had, and a decree rendered awarding Sims a lien on the property, on the ground that he had succeeded to the rights of Bidleman in relation to the debt which he had discharged; that Sims' present title is derived from a sale of the property made in execution of that decree. It further appears that the mortgages involved in the present suit were given by George and Eliza Betts on March 13, 1889.

There is in the briefs of counsel much discussion touching the power of this court to alter the decree rendered by it on December 14, 1888, but we think the question is not of vital importance. For present purposes we shall assume that the view of counsel for Upton and Holland is correct, and that a court of last resort has no rightful authority, after the adjournment of the term at which a judgment was pronounced, to grant a rehearing except

in response to a motion seasonably filed.   Conceding, then, that the decree in favor of Betts and against Sims was a finality on March 13, 1889, what fact did it conclusively establish?   What was determined with respect to the property upon which persons dealing with it might safely rely?   The action was brought to obtain an adjudication of the question of ownership, and that was the only point considered or decided.   No issue was raised as to the existence or validity of any lien on the land in favor of Sims; and no such question was set at rest by the decree.   The petition, which is set out in *Betts v. Sims*, 25 Nebr., 166, merely charged that Betts was the owner of the property, and that a certain quitclaim deed through which Sims claimed title was void.   It was not alleged that any other adverse right or interest was being asserted.   That nothing but the validity of the quitclaim deed was adjudicated is further shown by the fact that this court, after final judgment, and without any modification thereof, permitted Sims to file an amended answer, which eventually became the basis of the decree establishing his right of subrogation.   Had this matter been covered, either generally or specifically, by the decree in favor of Betts, it would not have been permissible to again litigate it without a vacation or modification of that decree.

The plaintiffs in error may have loaned money on the faith of the judgment quieting Betts' title, but they were certainly not induced by it to believe that Sims did not have a lien on the property.   The mortgages involved in this litigation are junior incumbrances, and they are, therefore, not entitled to priority over Sims' equitable lien, unless Upton and Holland were ignorant of the existence of that lien at the time their rights were acquired. This they have not shown; they have neither pleaded nor proved it.   One who asks a court to give priority to a junior lien on the ground that it was obtained in ignorance of an elder latent equity must allege and prove that he acted in the transaction in absolute good faith.   In 2

Pomeroy, Equity Jurisprudence, section 785, it is said: "The allegations of the plea, or of the answer, so far as it relates to this defense, must include all those particulars which, as has been shown, are necessary to constitute a *bona fide* purchase. It should state the consideration, which must appear from the averment to be 'valuable' within the meaning of the rules upon that subject, and should show that it has actually been paid, and not merely secured. It should also deny notice in the fullest and clearest manner, and this denial is necessary, whether notice is charged in the complaint or not." In *Arlington State Bank v. Paulsen*, 57 Nebr., 717, it was held: "That one is a subsequent innocent purchaser of real estate. is an affirmative defense, which the claimant, to avail himself of, must plead; and upon him is the burden of proof to establish it." See *Bowman v. Griffith*, 35 Nebr., 361; *Garmire v. Willy*, 36 Nebr., 340; *Phœnix Mutual Life Ins. Co. v. Brown*, 37 Nebr., 705; *Baldwin v. Burt*, 43 Nebr., 245; *American Exchange Nat. Bank v. Fockler*, 49 Nebr., 713.

Since Holland's reply was a general denial, it is very clear that the court could not have rendered judgment in his favor on the theory that he was a *bona fide* mortgagee. And it is equally evident that Upton's allegation, that he took his mortgage on the faith of the decree rendered by this court in favor of Betts, is not an averment that he was without knowledge of Sims' equitable lien. There was no finding of the trial court that Upton and Holland were good-faith incumbrancers; but if there had been, it would not respond to any issue presented by the pleadings. Besides the failure to plead want of notice, there was also a complete failure to prove that fact. There was no evidence whatever bearing upon the question. Holland, who was acting for Upton as well as for himself, testified that he relied on the decree in favor of Betts, and had no knowledge that any steps were being taken to modify it. He did not, however, testify that he was ignorant of the right of Sims to be subrogated to the

Bidleman mortgage. Indeed, it would seem quite probable that he was aware of that right, for it was disclosed at the trial of *Betts v. Sims, supra,* and appeared in the findings made by the district judge in that case. It also appeared in the opinion of this court filed on December 14, 1888. The conclusion of the district court is right, and is

AFFIRMED.