FRANKLIN STATE BANK, APPELLANT, V. THOMAS GETTLE
ET AL., APPELLEES.

FILED APRIL 17, 1914. No. 17,622.

1. **Parol Evidence:** ACTION ON NOTE: CONSIDERATION. Where, in an action by a bank against the indorsers, the defense of no consideration is set up, parol testimony may be received to show the want of consideration and that the note was given for the mere convenience of the bank.

2. **Appeal:** CONFLICTING EVIDENCE. The verdict of a jury based upon conflicting evidence will not be interfered with by this court if there is sufficient competent evidence to support the same. *Franklin State Bank v. Chaney,* 94 Neb. 1.

APPEAL from the district court for Franklin county: HARRY S. DUNGAN, JUDGE. *Affirmed.*

*C. C. Flansburg* and *W. C. Dorsey,* for appellant.

*E. U. Overman* and *G. W. Prather, contra.*

HAMER, J.

Suit was brought in the district court for Franklin county by the Franklin State Bank against Thomas Gettle, William H. Chaney, Stephen T. Doher, Carson Hildreth, and W. E. Bruce. There was a verdict for the defendants Gettle, Chaney and Doher. The motion for a new trial was overruled, and there was judgment on the verdict. The plaintiff appeals.

Fitz & Bruce, who operated a brick-yard at Franklin, Nebraska, became indebted to the Franklin State Bank in the sum of $1,000, or thereabouts, which was secured by a chattel mortgage on the brick-yard property. The brick-yard business became insolvent. Fitz & Bruce owed Gettle $500, Chaney $200, and Doher $200. There was a meeting at the bank at the instance of Hildreth, its president and principal stockholder. He and the appellees, Gettle, Chaney, and Doher, talked over the financial affairs of the brick-yard with the view to saving the property of the

same and collecting the debts due to themselves. The talk seems to have been along the line of proceeding in a friendly way and to avoid litigation. There was talk of taking over the yard and releasing the chattel mortgage and turning the property over to the bank to sell, and then to pay the debts owing to the different parties, the bank and the appellees to receive *pro rata* payment according to their several claims. The interest of the appellees was to save their claims. One hundred fifty thousand brick were supposed to be ready for sale. They were valued at $7 a thousand. They were to be sold to pay special claims, such as mechanics' liens and labor claims. There was also other property supposed to be worth in the neighborhood of $2,500. The plaintiff bank appears to have been first to ascertain the insolvency of Fitz & Bruce. There does not seem to have been any writing at the meeting which was held December 19 or 20, 1902, when the note sued on was signed, but there was a writing. Hildreth explained at the meeting that, if the bank released its chattel mortgage against the brick-yard business, it could not carry its interest in the brick-yard; that the bank desired to have a note to hold as an asset representing its interest in the brick-yard property; that while the bank was the holder and owner of an interest in the brick-yard, as were the appellees, yet it desired its interest in this brick-yard property represented in the bank assets in the form of a promissory note. It is claimed that the appellees were asked by Hildreth as an accommodation to the bank to indorse the note, and that Hildreth said he would also indorse the same. This was to be done as an accommodation to the bank so that the bank could carry the note until the brick-yard could be turned into cash and the money received from the sale prorated according to the agreement, at which time the bank would destroy the note. Bruce signed the note as the maker thereof, and Gettle, Chaney, Doher, and Hildreth indorsed it. The note was made payable to Thomas Gettle or order. It is claimed that Gettle had no interest except as a joint maker with the other

defendants. That the note should be made payable to him was a part of the arrangement.

After this arrangement a considerable quantity of brick was sold. Hildreth took some of the brick to build a new bank. The brick were manufactured at the yard. Gettle and Chaney wanted brick also. The bank kept disposing of the property and applying the money to its own note or paying off claims against the yard, but it is claimed by Gettle, Chaney, and Doher that they received no money.

Gettle, Chaney, and Doher filed a joint answer to the plaintiff's petition. They admitted the execution and delivery of the note, and set up that Hildreth was the president and principal stockholder of the bank, and its general manager and agent; that on behalf of the bank the note sued on had been made; that at the time of bringing the action Hildreth was still the president of the bank and transacting and directing its business; that the defendants, together with the plaintiff bank had been interested as creditors in the operation of the brick-yard, which had been turned over to them by Fitz & Bruce, who owed the bank a thousand dollars, Gettle $500, Chaney $200, and Doher $200, each of said sums being secured by chattel mortgages; that it was agreed that all of said chattel mortgages should be released; that the bank agreed to operate and manage the property turned over by Fitz & Bruce for its own benefit and the benefit of the defendants, paying the claims of the plaintiff and defendants *pro rata* out of the proceeds of such operation and management; that the plaintiff bank by Hildreth had requested the defendants to sign the note as evidence of the interest of the plaintiff in the property and for the convenience of the plaintiff, and in order that the plaintiff might carry its interest in the brick-yard as an item of loans and discounts rather than as an item of personal property; that the defendants signed said note, together with their co-defendant, Carson Hildreth, he being at the time the representative of the plaintiff bank; that said note was to be of no force or effect except for the convenience of the plaintiff, which was to carry the said note on its books as a

resource and expressed in a promissory note instead of
other personal property; that the defendants received no
money because of the signing of the said note, and that
no consideration of any kind came to the defendants from
the plaintiff bank; that at the time the notes were signed
the defendants were assured by the bank that it would sur-
render or destroy the note as soon as the brick-yard prop-
erty was disposed of; that in or about April, 1904, it was
agreed that the defendants should waive their claims
against said property, and that the plaintiff bank should
have full possession and control of it without regard or
reference to the claim of the defendants, and should sell
the property and dispose of the same to pay its own claim
against Fitz & Bruce without accounting to the defend-
ants, and, in consideration of the release and the taking
over of the property free from the claim of the defend-
ants, the bank was to destroy the note so that there should
be no possibility of its being held as an obligation against
the defendants. It is further alleged that the plaintiff
bank procured the note through fraud and deceit; that at
the time of the execution of the same it intended to hold
the note as an obligation against the defendants, and that
such intention was not known to the defendants, but that
the defendants believed and relied upon the statements of
the plaintiff that it wanted said note merely as a conve-
nience and without any purpose to hold the defendants lia-
ble. The reply to this answer was a general denial.

There was evidence before the court tending to establish
the defense set up by the defendants. Hildreth does not
seem to have had any personal claim, but he agreed to as-
sume $300 of the debt due to the bank. This would re-
duce the bank's claim to $601.34. The written agreement
made about the same time the note was made may tend
to somewhat confuse and prevent a clear understanding
of the facts. There is testimony tending to show that
Doher, Gettle, Hildreth, and Chaney took possession of
the brick-yard and sold the brick on hand. They seem to
have hired a manager. He took charge of the brick-yard,
but it does not seem to have paid out. Hildreth contends

that the transaction was fair, and that there was a real indebtedness to the bank. The good faith and honesty of the transaction has been submitted to the jury. There was a sharp and persistent conflict of testimony at the trial.

The case of the *Franklin State Bank v. Chaney,* 94 Neb. 1, presents a case very like this one. It seems to be its twin. In that case the same oral agreement made in this one was discussed, and the finding of the jury was the same as in this one and its finding was sustained by this court; Judge Letton delivering an opinion, which seems to include a clear comprehension and disposition of the case. He recites the evidence, and says that there is a decided conflict in it "on almost every material point, and we are unable to say that there is not sufficient evidence on behalf of the defense to support the verdict on the issue as to want of consideration."

The verdict of a jury based upon conflicting evidence will not be interfered with if there is sufficient competent evidence to support the same. Parol testimony may be properly received to establish the defense of no consideration and to show that the note was given merely for the convenience of the bank and so that it might hold the note as a memorandum of the transaction. We are unable to say that the evidence is not sufficient to sustain the verdict. It was clearly a question for the jury to decide. They have found for the defendants.

The judgment of the court below is

AFFIRMED.

BARNES, ROSE and SEDGWICK, JJ., not sitting.