Galt v. Hildreth.

---

AMOS A. GALT ET AL., APPELLEES, v. CARSON HILDRETH, APPELLANT.*

FILED JUNE 3, 1916. No. 18938.

1. **Compromise and Settlement.** A settlement of a matter in controversy between the officers and directors of a bank on the one hand, and other persons interested as alleged debtors in the transaction on the other hand, where no fraud is alleged or proved, is binding on all parties to such settlement.

*Opinion modified. See opinion, p. 422, *post.*

2. **Banks and Banking**: SALE OF STOCK: CONTRACT: ENFORCEMENT. Where, in making a sale of bank stock, the president of the bank agreed to pay to the purchaser notes held by the bank on a given date amounting to $3,000, to be selected by the purchaser, the contract may be enforced after the purchaser has exercised his right of selection.

3. ———: ———: ———. An agreement on the part of the seller to pay to the purchaser three-fifths of the difference between the profits of the bank for a designated year and $8,000 net profit is an enforceable agreement.

4. ———: ———: PROFITS. In estimating the amount of the net profits, the guaranty fund required by the banking department to be set apart under the banking laws of the state may be deducted from the gross profits.

5. **Judgment**: CONCLUSIVENESS. The defense successfully made by one of the signers and indorsers of a note, if not made on purely personal grounds, will bar a future action by the same plaintiff on the same obligation against another joint defendant.

APPEAL from the district court for Lancaster county: WILLARD E. STEWART, JUDGE. *Affirmed.*

*Flansburg & Flansburg,* for appellant.

*Stewart & Stewart, contra.*

BARNES, J.

This was an action brought in the district court for Lancaster county by Amos A. Galt and Reuben P. Galt against Carson Hildreth and the Franklin State Bank, to recover a balance alleged to be due on the following contract: "Carson Hildreth hereby gives the parties of the second part the privilege on January 1, 1913, of selecting notes to the value of $3,000 out of the notes on hand belonging to the bank in the regular loans and discounts on November 10, 1911, and the said Carson Hildreth agrees to pay the bank the face value with accrued interest from November 10, 1911, to January 1, 1913, on said notes. It is further agreed that, if the net profits of the bank for the calendar year 1912 shall not equal $8,000 after allowing salaries to the amount of $3,600, the said Carson

Hildreth shall make good to the said second parties three-fifths of the amount of the deficiency, but if the net profits of the bank exceed $8,000, then the second parties agree to pay to the said Carson Hildreth one-half of the three-fifths of said excess.  It is further agreed that the said Carson Hildreth is to be retained as president of the said bank at a salary of $50 per month to the end of the calendar year 1912."

Plaintiffs' amended petition alleged that the liability of Hildreth was to make good three-fifths of the deficit in the net profits of the bank for the year 1912, which was alleged to. be $5,000.  The plaintiffs further alleged that they had selected certain notes, among which was a note made by one Curtis to the bank for $2,100, which they insisted Hildreth should pay to the bank, and, in order that a recovery might be had in the suit, the Franklin State Bank was named as a party defendant.

To the amended petition the bank filed an answer and cross-petition, by which it adopted the contract between the Galts and Hildreth, which provided for the selection by the Galts of $3,000 out of the notes on hand belonging to the bank in the regular loans and discounts on November 10, 1911, and which Hildreth, by his contract, agreed to pay with accrued interest from November 10, 1911, to January 1, 1913.

The cross-petition alleged that only $514.70 was paid on March 12 and $502.50 on February 5, 1913, on the Curtis note, leaving due the bank $2,301.17 with interest from January 1, 1913, at 7 per cent. per annum.  Hildreth by his answer alleged that he paid $514.70 on March 12, 1912, and later on, in a settlement of the Curtis matters with the bank, he took up the note for $2,100, and a note for $152.50, which notes had been selected by plaintiffs under the contract, making in all a payment of $2,767.20, leaving a balance only of $232.80, and that plaintiffs had not selected any note of that amount, but, when so selected, Hildreth by his answer alleged he would pay the same under the contract.  By his answer to the bank's first

cause of action, Hildreth alleged that the bank had settled with him in relation to the Curtis transaction. He alleged that the title to the Curtis land was taken to himself for the benefit of the bank to secure the debt of $2,100; that the directors of the bank met on or about February 5, 1913, and agreed to exchange the Curtis land of 280 acres, free and clear of incumbrances, with one Deichen, for a mortgage of $5,000 on said Curtis land to be executed by Deichen to the bank, and a transfer to the bank of the 160 acres of land owned by Deichen at an agreed valuation of $7,000, with a $1,000 mortgage thereon. Hildreth further alleged that he had made advances on account of the Curtis matters, which he estimated at $1,576.46, without interest, and which did not include his personal expenses, admitted that he had received some rents from the Curtis farm, and alleged that it was finally by the directors agreed that he should receive $1,500 for his claim out of the profits of the transaction, and in order to obtain possession of the two Curtis notes, which plaintiffs had requested him to pay to the bank, he paid $502.50 to the bank in settlement of the balance of its claim against Curtis; that the aggregate of its claim, without interest, amounted to $11,502,50; that the proceeds of the Deichen transaction yielded the bank $11,000; that said transaction was completed, and that he paid the bank $502.50 in full settlement of the Curtis account, receiving $1,500 out of the profits from the bank, and thereupon conveyed the premises at the request of the bank to Deichen, and received the Curtis notes for $2,100 and $152.50 uncanceled, while at the same time all of the other Curtis notes were canceled and paid, and the Curtis land which had secured their payment was transferred by him to Deichen; that the settlement was full and complete so far as all of the Curtis notes were concerned.

It was alleged in the cross-petition of the bank that Hildreth, in June, 1909, had guaranteed the payment of the Curtis notes at the time he sold certain of the bank stock to other individuals. As to that guaranty, Hildreth

alleged that he had agreed that, if any loss accrued to the stockholders on account of such notes, he would make their share good to them without loss.  He further alleged that at the settlement of the Curtis matter it was estimated that the bank would suffer a loss of $1,000, and that he paid to the stockholders, to whom his guaranty was made, that sum in settlement of their demand.

By the bank's cross-petition it sought to recover from defendant Hildreth for and on account of a note for the sum of $887.75, due July 6, 1904, with interest, which was signed by Carson Hildreth, W. H. Chaney and Thomas Gettle.  It was alleged that Hildreth, in violation of his duty, failed to pay that note, but instituted a suit by the bank thereon, causing himself to be sued, together with the other makers; that Gettle and Chaney answered separately for themselves, denying their liability, and setting up as defenses to the action that the note was executed by them without consideration, and, further, that they had been released and discharged by the defendant subject to the execution thereof from all liability thereon.  Upon trial, a verdict of the jury was rendered without special findings in their favor, and judgment was rendered thereon by the court. It was further alleged that defendant Hildreth prosecuted an appeal to the supreme court from that judgment, where the same was affirmed; that Hildreth did not answer in that action, but was in default, and therefore the judgment in that case did not release him from his liability for the payment on said note.  Answering this cause of action, Hildreth denied that the bank had loaned him any money; admitted the execution of the note; admitted the guaranty indorsed by Gettle, Chaney, Doher and Hildreth; admitted the bringing of the suit in Franklin county in which the liability of Gettle, Doher, Chaney and Hildreth was alleged to be that of joint makers; admitted that Doher, Gettle and Chaney filed answers; admitted the execution and delivery of said note, but alleged that the Franklin State Bank and the other defendants had been interested

as creditors in the management of a brickyard which was turned over to them, the bank to the extent of $1,000, Gettle $500, Chaney $200, and Doher $200, secured by chattel mortgages which were superior to that of the bank; that it was agreed that the mortgages should be released, which was done, the bank agreeing to operate said property and pay the claim of the bank and the other creditors *pro rata* out of the profits. The answer alleged that the Franklin State Bank requested defendants to sign the note in suit as evidence of its interest in said property, and for its convenience; that it was also agreed that said note was of no force or effect except for the convenience of said bank in carrying its interest in said property on its books as a resource expressed in an item as a promissory note, rather than as a resource in an item of personal property; that the defendants received no money or credit, nor did any consideration whatever move from the plaintiff bank to the defendants or any one else for the same, and that the defendants received no benefit or consideration for signing said note.

There was a further plea of the statute of limitation. Replies were filed denying the allegations of the answer, and it was stipulated that the cause should be tried to the court on those issues. A trial was had, and the court by its decree found all of the issues in favor of defendant Carson Hildreth, and against the bank upon all causes of action set out in its cross-petition, "other than the right of said bank to compel specific performance of the condition of said contract for the payment by said Hildreth of certain promissory notes owned by said bank November 10, 1911, and to be designated by plaintiffs. The court finds that said plaintiffs designated the notes of C. P. Curtis, $2,100, F. T. Burnham $500, and Clement Chase $500, of which the $500 Chase note has been by said Carson Hildreth duly paid; and that said bank, as to the $2,100 Curtis note, has by its own act placed it beyond its power to enforce collection thereof. The court finds that it is the right of the plaintiffs to designate $2,500 of notes, includ-

ing the $500 Burnham note, owned by said bank on November 10, 1911, within twenty days from the entry of this decree, and, upon failure of said Carson Hildreth to pay notes so selected by plaintiffs to the said bank, in the amount of $2,500, with interest thereon from November 10, 1911, within forty days from the date of this decree, then defendant Franklin State Bank shall have judgment against said Carson Hildreth for said amount. The court further finds that, by the terms of the contract hereinbefore mentioned, the defendant Carson Hildreth agreed to pay said plaintiffs three-fifths of any deficiency in the net earnings of said bank for the year 1912, under the sum of $8,000. The court finds that the net earnings, as aforesaid, amounted to the sum of $5,562.10, and that plaintiffs are entitled to recover from the defendant Carson Hildreth, on account of such deficit, the sum of $1,607.78." Judgment was .entered on the findings, from which Hildreth appeals. Cross-appeals were likewise taken by the Galts and the bank from the decree which found in favor of Hildreth on the other issues.

The cross-appellants, Galt and the Franklin State Bank, each complains of the finding and decree of the trial court that Hildreth was not liable as guarantor for the payment of the Curtis notes. They contend that the finding on that question is not sustained by the evidence. The record discloses that in 1909 Hildreth was the owner of the majority of the stock of the bank, in fact was the owner of the bank. At that time the bank had among its assets the note of C. P. Curtis for $2,100, secured by mortgage on his 280-acre farm. Hildreth had indorsed the note or guaranteed its payment. Curtis was largely indebted to other persons, and as a matter of precaution he was induced to make a deed of the farm to Hildreth, in order to prevent other creditors from obtaining liens thereon. Hildreth took the title to hold for the benefit of the bank. Certain persons had purchased some stock in the bank, and Hildreth at that time guaranteed that he would make good any loss they might sustain by reason of the trans-

action. In November, 1911, the Galts purchased a majority of the stock of the bank, and obtained from Hildreth the guaranty and agreement which is set out in the first part of this opinion. The Galts then took possession of the bank, and thereafter, with the directors, conducted its business. A short time before the meeting of the directors, which was held in February, 1913, an opportunity occurred for the bank to exchange the 280 acres of land, the title to which was held by Hildreth, with one Deichen, for 160 acres of land owned by him, on which there was a mortgage for $1,000, and obtain the difference in value between the two tracts. Curtis and one Mahin, his attorney, went to Franklin, and the exchange was made. Hildreth, acting for the bank, conveyed the 280-acre farm to Deichen, and he executed a mortgage thereon for $5,000 in favor of the bank. The Deichen land was conveyed to the bank at the agreed value of $7,000; there still being a mortgage on the land for $1,000. In order to even up the values, Curtis executed a note for $2,000 to Mahin, which Hildreth guaranteed. When the directors of the bank met on February 3, 1913, the matter of the Curtis deal came up for consideration. The evidence shows that the transaction was approved and adopted. The value of the Curtis land was agreed to be $11,500. Hildreth gave the bank his check for $502.50, and surrendered all claims on the Curtis land, and was exonerated from all charges as to rents which he might have collected while he had possession of it. He was allowed $1,500 for advances made by him on account of the transaction, and the whole matter was closed up. The minutes of the meeting are as follows:

"Special Directors' Meeting, February 3, 1913.

"Meeting held to consider a proposition to trade the farm belonging to the bank near Gaylord, Kansas, to Mr. Deichen for his 160-acre farm near Reamsville, Kansas. It was voted to make the trade along the lines outlined in the option given by Mr. Deichen to the Bank.

"(Signed) R. P. Galt, Secy."

The old notes were then canceled, with the exception of the Curtis note for $2,100, and the small note for $152.50. Those notes were not canceled, and Hildreth took possession of them without objections by any one. Hildreth testified to the foregoing facts, and his evidence was corroborated by the testimony of the directors, and in part by the Galts themselves. We are therefore of opinion that the evidence was sufficient to sustain the finding of the trial court on that issue.

Appellant Hildreth contends that the court erred in allowing the cross-appellants to select notes, other than the Curtis notes, to the amount of $3,000 and require him to pay the same. On this question it may be said that the contract hereinbefore referred to does not mention any particular notes. It is an agreement on Hildreth's part to pay notes held by the bank on January 1, 1912, to the amount of $3,000, with interest thereon. The Curtis notes having been paid in the manner above stated, the Galts were at liberty to select other notes to the amount which Hildreth had agreed to pay. We are therefore of opinion that the court was right in its judgment on that question.

Hildreth also contends that in estimating the net profits of the bank for the year 1912 the court erred in deducting the sum of $723.06, which was the guaranty fund charged by the state against the bank under the existing banking laws. This sum was required to be set apart and segregated from the funds of the bank. The bank held it as a reserve fund for the payment of assessments under the provisions of the law, the state requiring it to be kept on hand at all times subject to call. This being so, we are unable to say that it was error for the court to deduct that amount from the profits of the bank. The parties on both sides are strenuous in their contentions as to the question of what should be considered as net profits for the year 1912, but, after considering all of their claims and the evidence contained in the record, we have concluded to adopt the finding of the trial court on that question.

This brings us to the consideration of the question of the liability of Hildreth to pay the bank the disputed items of the so-called brickyard notes.

It appears that the bank commenced an action on one of the brickyard notes, making Hildreth and all of the other joint makers defendants. The other defendants filed answers setting up as their defenses that there was no cause for the note; that the bank had taken over the brickyard and had conducted it for a time; that the enterprise had failed, and the bank had made certain payments on the notes out of the profits of the transaction, and therefore they were relieved from liability on the note. Hildreth filed no answer, but gave testimony on the trial which, if believed by the jury, would have authorized a judgment in favor of the bank. The jury found for the defendants, and judgment was rendered in their favor on the verdict. The bank appealed to this court, where the judgment was affirmed. *Franklin State Bank v. Chaney,* 94 Neb. 1. The bank then brought another action on one of the notes against another of the signers, and the same defense was pleaded. The jury found for the defendants, and judgment was rendered on the verdict. The bank appealed, and again the judgment was affirmed. *Franklin State Bank v. Gettle,* 96 Neb. 60.

It is contended by the bank that the judgment in those cases did not release Hildreth's liability on the notes because he did not answer in those cases. There is some conflict in the authorities, but in *Chase v. Miles,* 43 Neb. 686, it was said: "A judgment rendered by a court which had jurisdiction of the parties and of the subject-matter, as between such parties, conclusively settled all questions litigated."

In *Upton v. Betts,* 59 Neb. 724, it was held: "A matter in issue covered, either generally or specifically, by the decree of the court cannot be again litigated without a modification or vacation of that decree."

In the cases of the bank against Hildreth and others, no judgment was rendered against him. If Hildreth was

an indorser and guarantor, that is, if he was an indorser with enlarged liability, the bank could not now sue him because the prior and subsequent indorsers were released by the jury and the judgments of the court in the actions on these notes. We are therefore of opinion that the district court was right in holding that the bank was not entitled to a judgment for the balance of the brick-yard notes.

Without further discussion of the issues involved in this suit, the judgment of the district court is

AFFIRMED.

SEDGWICK, J., concurs in the conclusion.

MORRISSEY, C. J., and LETTON, J., not sitting.