FRANK H. COX, EXECUTOR, ET AL., APPELLANTS, V. JOSHUA COX ET AL., APPELLEES.

FILED APRIL 14, 1933. No. 28464.

*Craft, Edgerton & Fraizer,* for appellants.

*Kirkpatrick, Good & Dougherty* and *John L. Riddell, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, EBERLY, DAY and PAINE, JJ.

PAINE, J.

This is a suit at law to recover damages in the sum of $8,625, with interest. The trial court dismissed the action at plaintiffs' costs. Motion for new trial being overruled, plaintiffs appealed.

The plaintiffs are the executor and heirs of James M. Cox, deceased, and the defendants named in the petition are five men and the executor of a sixth, who were the six parties of the first part in the contract sued on, dated December 4, 1924, in which contract the late James M. Cox, of Hampton, Nebraska, was the second party, and a copy of the contract was attached to the petition as exhibit A.

The last paragraph of said contract reads as follows: "And whereas, the said M. T. McEvoy has given the first parties notice that he now desires to dispose of said

stock; and whereas, J. M. Cox has expressed his willingness to take over from the said M. T. McEvoy the above described stock and will carry it for one year from this date on condition that parties of the first part will agree to protect him against any possible loss that may come from his said ownership, and will guarantee him seven per cent. interest on his said investment; and whereas we, the parties of the first part, not knowing at this time any one to whom said stock can be sold, in continuance of our loyalty to the corporations above described, do hereby enter into the foregoing outlined agreement with the said J. M. Cox, and do hereby personally agree to protect him against loss on the investment and hereby guarantee that it shall net him seven per cent. annual interest. We also agree to take over the said stock within one year from this date or as soon thereafter as we may receive notice from the said J. M. Cox that such is his desire. The said J. M. Cox in consideration of these agreements agrees that he will turn over the said stock to the first parties at any time he may receive notice from them that they have found a purchaser who will pay the same price paid by the said J. M. Cox."

The prayer of the petition prays judgment against the defendants and each of them for the sum of $8,625 and interest, being the exact amount James M. Cox advanced.

To this petition the defendants filed answer, in which they admitted that Frank H. Cox was the executor of the estate of James M. Cox, and that the defendants had never repurchased or taken back the shares of stock, and denying each and every other allegation in the petition. A jury being waived, trial was had to the court. There was no dispute in regard to the making of the contract, but the defendants contend that an issue was tried, which was not set out in the pleadings, as to whether any tender was made, as required by law, of the stock involved in the contract of indemnity.

It is clear from the contract, set out in the petition in this case, that James M. Cox did not desire to buy this

McEvoy stock at all, and that, if he assisted by furnishing the money for taking it up from McEvoy, he would only do so on the personal written guaranty of the six men who were parties of the first part, and that, upon such written guaranty being signed, the $8,625 was charged against his account December 4, 1924, in the American State Bank, on their promise therein to protect him against loss, and, in addition, to pay him 7 per cent. interest on the $8,625.

It appears that the first parties to the contract paid James M. Cox the 7 per cent. interest. promptly, as provided in the contract, as long as he lived, for if the dividends from the shares of bank stock involved were not sufficient, they made up the difference between them.

The district court, in finding for the appellees, found specifically that at no time prior to the commencement of the action had any tender been made of the stock described in the contract. The contract also covered stock in the American Bank Building Association and in the American Trust Company, but there is no question but what the stock in these small subsidiary companies was duly tendered, but the main contention is as to the stock in the American State Bank. It appears that, upon the failure of the American State Bank, upon November 19, 1929, a proposition was made that all of the stockholders therein should surrender their stock, and in that way avoid the double liability thereon, and that this reorganization wiped out all of the old stock, and a new bank, under a new name, issued new stock, and had entirely new officers and new stockholders. This amounted to a dissolution, so far as these old stockholders were concerned. The certificate, No. 84, dated December 4, 1924, for 20 shares of stock involved in this contract, was surrendered by the executor February 22, 1930, at the same time that the shares of stock owned by the appellees in the same bank were surrendered up for cancelation, and it was all a part of the same transaction, and it was to the advantage of all the stockholders, including all of

the signers to this contract, that every certificate of this stock be turned in and canceled, so that all of them might avoid being held for the stockholders' double liability. No allegation was set up in the answer setting out a failure to tender back the stock certificate. The reorganization of the American State Bank of York was, to all intents and purposes, a dissolution of the old bank, as even the name thereof was changed.

1. It is insisted by the appellee that the plaintiff was required to plead and prove a tender of this stock before he could sue for the loss thereon. The appellants insist that, of the six signers of the indemnity contract, one has died, and some of them live in separate towns, and that the only purpose of a tender is to keep a man from recovering for the value of property and at the same time keeping the property. They insist that the appellants are suing on a contract which the appellees are attempting to repudiate under their general denial.

In *Heywood v. Hartshorn*, 55 N. H. 476, a debtor offered to pay notes only on condition that they would be surrendered to him, but he was aware that the payee had taken the notes to another state and after his death they could not be found, and so the administrator was unable to tender the notes, but was willing to give a receipt for the amount due. It was held that the maker should pay the notes but no interest thereon after maturity, at which time he was ready to pay them. Ann. 14 A. L. R. 1120.

"Acts insufficient in themselves to make a complete tender may operate as proof of readiness to perform, so as to protect the rights of a party under a contract, where a proper tender is made impossible by reason of circumstances not due to the fault of the debtor." 26 R. C. L. 623, sec. 2.

"The act or omission relied upon as dispensing with the necessity of a tender must have occurred prior to the time fixed for performance on the part of the party alleging the default." Hunt on Tender, p. 49.

There is authority holding that a formal tender of shares is not necessary to fix liability on a purchaser for the breach of his contract, where the contract provides that the seller is to hold the stock and deliver it when called upon, or where the buyer declares his intention not to perform, or refuses to perform, his contract, and that in such cases it is sufficient that the seller is ready, willing and able to deliver the stock, and that this is especially true where a proper tender is made impossible by reason of circumstances not due to the fault of the holder thereof. It has also been held that a tender is waived if the contract has been repudiated. It is insisted that, if the appellee desired to take advantage of a failure to tender back the bank stock which had been surrendered up for cancelation, such issue should have been tendered by appropriate pleadings in the answer, and it is insisted that the appellees are estopped from insisting upon tender in the absence of pleading, and by permitting the appellants to turn in this bank stock for cancelation without objection, and further, by their own acts in turning in their own bank stock for cancelation. 26 R. C. L. 623-625; 38 Cyc. 134, 135; 14 C. J. 701; *Graham v. Frazier*, 49 Neb. 90; *Prime v. Squier*, 113 Neb. 507; *School District v. Shoemaker*, 5 Neb. 36; *Strasbourger v. Leerburger*, 233 N. Y. 55; *Rupard v. Rees*, 94 Okla. 49; *McLeod v. Hendry*, 126 Ga. 167; *Galt v. Hildreth*, 100 Neb. 15.

"Where the parties entered into an oral contract to repurchase the stock so issued and in pursuance of this contract did repurchase three hundred dollars worth of the same, such action by the parties places their own construction upon the meaning of the contract, and the meaning the parties so give to their own contract will be followed by the court." *Griffin v. Bankers Realty Investment Co.*, 105 Neb. 419.

"A contract with a corporation by which it sells certain of its shares of stock and agrees to repurchase the same upon the happening of a certain specified event,

is not *ultra vires;* and for a breach thereof the purchaser may recover of the corporation the amount agreed upon as the price of such repurchase." *Fremont Carriage Mfg. Co. v. Thomsen,* 65 Neb. 370.

Acts which, in themselves, are insufficient to make a complete tender may constitute proof of readiness to perform, so as to protect the rights of a party under a contract, where a proper tender is rendered impossible by circumstances not due to the fault of the tenderer. *Schaeffer v. Coldren,* 237 Pa. St. 77, Ann. Cas. 1914B, 175.

2. If the property is entirely worthless to both parties, it need not be returned. *Perley v. Balch,* 23 Pick. (Mass.) 283, 34 Am. Dec. 56. For instance, it has been held that worthless evidence of title need not be returned. *Reddington v. Henry,* 48 N. H. 273.

We have found a New York case which is quite similar to the case at bar. In a law action which had been brought to recover moneys advanced on an agreement to obtain street railway bonds or the money was to be returned at any time the plaintiff felt dissatisfied, the bonds were duly executed and delivered to a trust company, which issued a certificate that it held the bonds. However, the franchise was not obtained for the railway, and plaintiff demanded the return of his money. The trial court charged the jury that, if the certificate had no value, it was sufficient to tender it at the trial. The jury returned a verdict for the plaintiff. The appeal was based upon the refusal of the trial court to instruct the jury that, if the certificate had not been tendered to the defendant before suit, their verdict should be for the defendant. Judge Bradley, of the court of appeals, held that the refusal to so charge was correct; that, if the certificate had no value, it is sufficient to surrender it at the trial, for the action was not founded upon a rescission of the contract, but upon a contract to recover money which the plaintiff claimed the defendant had promised to pay upon demand. *Lewis v. Andrews,* 127 N. Y. 673.

Several other errors are set out in the brief of appellants, but as a reversal is necessary on the question of tender, it will not be necessary to consider the other assignments.

For the error of the trial court in finding that the plaintiffs, in order to maintain this action at law, must plead and prove a delivery or tender of the bank stock involved herein before bringing suit, the judgment of dismissal at plaintiffs' costs is hereby set aside and reversed, and the cause remanded for a new trial.

REVERSED.