C. AULTMAN & CO., PLAINTIFF IN ERROR, V. I. M. STOUT, DEFENDANT IN ERROR.

Contract: BREACH: DAMAGES. When two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered either arising naturally, *i. e.*, according to the usual course of things from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract as the probable result of the breach of it. *Hoadly v. Baxendale*, 9 Exchq. R., 341.

ERROR to the district court for York county. Tried below before NORVAL, J.

*Lamb, Ricketts & Wilson,* for plaintiff in error.

*Sedgwick & Power,* for defendant in error.

COBB, CH. J.

This action was brought in the court below by the plaintiff in error, an incorporated company of the state of Ohio, against the defendant in error on two promissory notes, each for the payment of one hundred and thirty dollars with interest, on which plaintiff claimed that there was due and unpaid at the time of commencing the suit the sum of three hundred and eighty-five dollars.

The defendant by his answer admitted the execution and delivery of the two promissory notes in manner and form as alleged by the plaintiff in its petition; but alleged that at the time of the making and delivery of the said two notes the plaintiff sold and delivered to the defendant one threshing machine and horse power for the agreed price of six hundred and fifty dollars, and that defendant gave plaintiff his five promissory notes for said purchase price, all of said notes being negotiable notes for $130 each, and defendant also agreed to pay the freight on said machine and horse power; that to induce the defendant to purchase said machine and power, and as part of said contract of sale, the said plaintiff agreed to furnish defendant a good, perfectly constructed threshing machine, made of good material, with a thirty-six inch cylinder, and a twelve-horse power, well constructed, and capable of furnishing sufficient power to run said threshing machine, and also warranted that said machine if properly managed would thresh one thousand bushels of wheat per day; that said defendant relied upon said warranty, etc.; that said machines were not nor either of them as warranted by the said plaintiff as aforesaid, but the machine so furnished by plaintiff was not a thirty inch cylinder, and was of poor material and construction, and was imperfectly and improperly made

and constructed, and would not thresh one thousand bushels of wheat per day if properly arranged, but was absolutely worthless; that the said power so furnished was not a twelve-horse power, was not well constructed and of good material, and was not capable of furnishing sufficient power to run said threshing machine, and was of no value; that two of said notes for $130 each and interest thereon from the eighth day of September, 1877, negotiable in form, drawn to the order of the plaintiff and delivered to it, are now outstanding, and for which the said defendant is liable; that by reason of the failure of the said plaintiff to keep and perform its said contract and agreement, and by reason of the failure of said warranty and the failure of the said machine and power in the respect warranted the defendant has been damaged in a large amount; that defendant had taken large contracts for threshing, and was unable to fulfill said contracts by reason of the said failure of the said machine and power, and so lost large profits which he otherwise might have made; and that defendant has lost large quantities of grain, being unable to thresh and save the same by reason of the said failure of said machine and power; and that defendant expended a great amount of time and labor by himself and others in his employ in endeavoring to repair said machine and power, and in endeavoring to use the same, etc.

There was a trial to a jury, with a verdict and judgment for defendant for five hundred dollars and costs.

It seems from the testimony as preserved in the bill of exceptions that the machine was sold and delivered to the defendant early in September, 1877. The evidence of warranty is of a very unsatisfactory character. It is impossible to say with any certainty whether the warranty was in writing on the form for orders prepared by the company, or was only verbal by Gandy, the local agent. But there is not a shadow of testimony that Gandy as local agent was authorized to bind the company by warranty.

It seems that from the first the machine failed to give satisfaction, and the defendant complained to the local agent soon after he took the machine to his farm. Defendant states in his testimony that he did not think that the machine would work before he took it home; but upon trying it, the principal difficulty seemed to .be with the power—that the power was not sufficient to run the separator.

Afterwards, it seems that one Aiken appeared on the scene, and promised to furnish a new twelve-horse power, and gave the defendant a writing to that effect. Yet defendant continued to run the machine at different places, but, as he says, with poor success during the season of 1877. In 1878, Gandy, the local agent, procured for defendant a new ten-horse power. According to Gandy's testimony, this new power was delivered to the defendant, and at the same time a deduction of fifty dollars was made on the price of the machine and credited on one of the notes, and that said new power and credit of fifty dollars was received by defendant in full of all claim for damages on account of the deficiencies in said machine. And defendant testifies that at the time of receiving said new power he gave up to Gandy the writing which he had received from Aiken. Defendant also testified that upon the receipt of the new power he went to work with it, and threshed for John Darling. In answer to the question, "How did it run?" he answered: "We didn't try to run it very hard because I was afraid of the new power. I just run along with it, and didn't examine it close. I was watching the jar to see if that was all right, and did n't notice the *separator* much. Darling did n't have a very big job, and coming along down to Hutchinson's, I met him with the boxing and oat sieve, and he said, 'Here is the boxing and oat sieve,' and he said, 'Gandy wants that piece of writing on that power;' and I said, 'All right, it is at home,' and I said, 'I am going * * .'" He further testified that the next work he

did with the machine was at Stally's.    To the question "How did the machine run there?" he answered, "We could not do anything with it at all.    I fixed the box and told Hutchinson about the boxing, and he came out there to see about it, and he said, it was not the boxing, it was the shaft that plays the mischief.    *    *    *    This was in the second year, 1878, after I got the new horse power.    I said, 'I believe it is a good power if it had a chance to do its work.'    The separator all the time was doing beautiful, and I said, 'Tell Gandy to send and get a new shaft made or I will send the separator in.    I can't do anything with it.    I will worry through this job.'"    It seems that after this new shaft was obtained, it was discovered that the difficulty was in the cylinder shaft not being placed in the center of the cylinder.    This was discovered by the blacksmith to whom the cylinder was taken for repairs in 1879, and so the defendant abandoned the machine.

The defendant was then permitted, over the objection of plaintiff, to testify as to the number of hands and teams he had in his employ and the amount of wages paid to the hands and for the teams; also the value of his own time and labor and board and board of hands and teams during the whole of the threshing seasons of 1877 and 1878; also, that for a portion of the time he paid six of his neighbors at the rate of one dollar per day and board to look at him try to make the machine work.    He also testified that it cost him one dollar a day for oil used on said machine to prevent its taking fire and burning up.

Plaintiff moved to strike out all of the testimony, as to damages sustained by the defendant before the modification of the contract, on the ground that the defendant had alleged in his answer that one of the considerations for the modifying of the agreement was the waiver on his part of all damages sustained by him before that time.    Motion overruled.

Plaintiff claims that there was error in the instruction of

the court in the third instruction, given on the court's own motion, in limiting the plaintiff's claim to the face of the notes and interest thereon, and not including the amount stipulated for attorneys' fees. This point is not well taken. In the case of *Rich v. Stretch*, 4 Neb., 187, this court, in the opinion by then CH. J. LAKE, says: "In cases like this, the court is authorized in its discretion to allow such fee (attorneys' fees) not exceeding ten per cent on the amount of recovery; but if such an allowance is made, the record should show the fact, and it should be kept entirely distinct from the judgment proper. It is considered in the nature of costs, and should be treated as such." This case has been followed in *Hendrix v. Rieman*, 6 Id., 516, and *Heard v. Dubuque County Bank*, 8 Id., 10, and will be adhered to.

The fourth instruction given by the court on its own motion is as follows :

"4. After you have found the amount of the notes as above, then determine from the evidence whether the machine was sold under a warranty, as defendant claims. If it was, then determine from the evidence whether such warranty failed. If the warranty was made, and if it failed, then, in order to determine the amount of the defendant's set off, you should find from the evidence the difference in the value of the machine as it actually was as compared with what it would have been worth if it had been as represented.

"This difference in value, together with a reasonable compensation for loss of time both by the defendant and by his hired help and horses caused by such defect, together with his actual and necessary expenses in trying to cure the defect, would give the amount that the defendant Stout could set off against the notes."

No objection can be taken to this instruction, except to the last clause; that, I think, is erroneous as applied to the evidence in this case, in not fixing a limit to the time and

money which the defendant could devote at the expense of the plaintiff in experimenting with the machine after the same proved defective in its operation.

Testimony had been admitted tending to prove the loss of two threshing seasons' time by four men and ten horses, regular hands, to say nothing of the six neighbors watching and waiting for ten days at a time, and the use of a dollar's worth of oil on the machine each day for 96 days; and by this instruction the jury is told by the court to allow the defendant a reasonable compensation for all this as a claim against the plaintiff. This I think was erroneous. The defendant would no doubt be entitled to compensation for his time and expenses in the setting up and testing the machine up to the time that the machine was put to the test as to whether it came up to the warranty or not; but after it proved to be defective, he could no longer experiment with it at the vendor's expense. Defendant, in his brief, claims that this experimenting was, to some extent at least, chargeable to encouragement held out by the agents of the plaintiff; but in point of fact, there is no proof of agency that would bind the plaintiff to anything done or said by Gandy or Aiken in respect to the machine after the giving of the notes; and indeed, the only proof of agency on the part of the defendant is that which arises by way of estoppel from the fact of the possession of the notes as payee by the plaintiff. We have often had occasion to refer to the case of *Hadley v. Baxendale*, 9 Excheq. R., 341, as the leading case on the point controlling this one. It is there laid down as the rule, that "Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered either arising naturally, *i. e.*, according to the usual course of things from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the time

they made the contract, as the probable result of the breach of it."

Applying this principle to the case at bar, it cannot be possible that the labor of four men and teams for two whole seasons and the consumption of ten barrels of machine oil would either naturally arise from the failure of the machine to run as warranted or that it was within the contemplation of the parties at the time they made the contract.

It is impossible to read the record in this case and escape the conviction that the case was not properly presented to the jury and that the damages found by them were excessive.

The judgment of the district court is reversed and the cause remanded for further proceedings according to law.

REVERSED AND REMANDED.

THE other judges concur.