CENTRAL GRANARIES COMPANY, APPELLEE, v. NEBRASKA LUMBERMEN'S MUTUAL INSURANCE ASSOCIATION, AP-PELLANT.

FILED APRIL 20, 1921. No. 21403.

1. **Appeal:** SUFFICIENCY OF EVIDENCE. In testing the sufficiency of the evidence to sustain a verdict in favor of plaintiff, admissible testimony tending to support plaintiff's case should be accepted as the truth.

2. **Insurance:** REFORMATION OF CONTRACT. In a suit on a fire insurance policy to recover a loss, the evidence outlined in the opinion *held* sufficient to establish the fact that the parties, in reducing their insurance contract to writing, made a mutual mistake in omitting from the description of the land on which the insured property was situated a railroad right of way.

3. ———: ———. The power of a court to correct a mutual mistake of parties in reducing their contract to writing implies the admissibility of proper and necessary proof of such mistake.

4. ———: ———: SEPARATE SUIT. A separate suit in equity to reform a fire insurance policy to correct a mutual mistake of the parties in omitting to describe part of the land on which the insured property is situated is unnecessary, and the insured may recover his loss under a single petition stating the necessary facts,

Central Granaries Co. v. Nebraska L. M. Ins. Ass'n.

whether the case is considered an action at law or a suit in equity, or both.

5. Trial: EQUITY: SUBMISSION OF ISSUES OF FACT TO JURY. A court exercising equity powers may submit an issue of fact to a jury and adopt their finding, if it is the proper deduction from the evidence.

6. Insurance: REFORMATION OF POLICY. A mutual correction of an unexpired fire insurance policy to cover a future loss does not prevent the insured from seeking the correction of the original draft to cover a past loss covered by the contract actually made but, through a mutual mistake, not correctly reduced to writing.

7. ———: ———. In respect to correcting a mutual mistake in reducing a contract of insurance to writing, a mutual insurance company is bound by the rules of equity and the principles of law applicable to other corporations and individuals.

8. ———: APPLICATION: IMMATERIAL REPRESENTATIONS. Under the statutes of Nebraska, in an action on a fire insurance policy, the right to recover for the loss of the insured property is not defeated by misrepresentations in the application for the insurance, if they did not contribute to the loss or deceive the insurer to its injury. Rev. St. 1913, sec. 3187.

APPEAL from the district court for Lancaster county: WILLARD E. STEWART, JUDGE. *Affirmed.*

*C. C. Flansburg,* for appellant.

*Hall, Baird & Williams,* contra.

ROSE, J.

This is an action on a fire insurance policy, issued to plaintiff by defendant September 15, 1917, to recover the loss of a warehouse and its contents which were destroyed by fire August 6, 1918. Plaintiff's claim is composed of two items, one for $614.20 on the warehouse and the other for $828.76 on the contents. The loss by fire and the amounts claimed are not controverted, but defendant pleads that the property destroyed was not covered by the policy in suit. From a judgment on a verdict in favor of plaintiff for the full amount of its claim, defendant has appealed.

It is argued by defendant that the trial court erred in

overruling a motion to direct a verdict in favor of defendant on the ground that plaintiff failed to make a case.

Plaintiff is a dealer in lumber and other building materials at Adams. Its lumber yard is on lots 4, 5, 6 and 7, and its warehouse and office are on the adjoining right of way of the Chicago, Burlington & Quincy Railroad. The application and the policy describe the lots as the location of the insured property, but make no mention of the adjoining right of way on which the warehouse was situated. Plaintiff pleads that the failure to include the right of way in the description of the land on which part of the insured property was situated was a mutual mistake and demands relief according to the policy correctly reduced to writing. Defendant contends, among other things, that the evidence is insufficient to prove the mutual mistake pleaded; that the policy as written states correctly the terms of the only contract made, and that defendant is a mutual insurance corporation having no authority to make an oral contract of insurance. The verdict of the jury was in favor of plaintiff. It follows that in determining the sufficiency of the evidence to prove the mutual mistake the testimony tending to support the affirmative of that plea must be accepted as the truth, though in some respects it is contradicted by other testimony. What, then, are the established facts and the proper deductions?

The negotiations for the insurance began between E. W. Taylor, treasurer of plaintiff, and E. E. Hall, secretary of defendant, both acting within their authority and both having offices in the Terminal Building in Lincoln. A few days before the policy was issued Taylor called on Hall and inquired about insurance on plaintiff's plant at Adams, consisting of lumber sheds, warehouse and office, the lumber sheds being on lots 4, 5, 6 and part of lot 7, and the warehouse and office being on the adjoining right of way of the Chicago, Burlington & Quincy Railroad. Taylor asked about the amount of insurance obtainable on the

plant, and was told by Hall that the maximum was
$5,000. The day this conversation took place, or the next
day, Hall called at Taylor's office and pursued the negotia-
tions. On a plat or blue print Taylor pointed out to Hall
the lumber sheds on the lots and the warehouse and the
office on the adjoining right of way. A pencil line made
at the time, showing where the warehouse leaned against
an elevator on the right of way, is still on the plat. Taylor
then told Hall that plaintiff wanted insurance on plain-
tiff's lumber yard, office, warehouse and contents at
Adams. Hall said he could have it to the extent of
$5,000. Without further conversation L. J. Thurn, sec-
retary of plaintiff, who had taken no part in the negotia-
tions, received a blank application for insurance, perhaps
from Hall. Knowing that the warehouse, part of the
lumber plant, was on the right of way, Thurn, through
an oversight, failed to mention the right of way in de-
scribing the location of part of the insured property, but
took the description alone from the deed to plaintiff's
adjoining lots. The policy, repeating the mistake in the
application, came back to Thurn, who handed it to a
clerk to be filed in plaintiff's office. Plaintiff paid the
membership fee and the subsequent assessments. In the
written policy defendant could have covered the ware-
house just as well as not. Hall said so after the fire, and
without requiring any additional compensation, or ex-
acting any increase in the cost of the insurance, changed
the policy in suit to cover the warehouse, and likewise
corrected other policies covering risks of plaintiff at other
yards without demanding any change to lessen the haz-
ards. The purpose in applying for and in procuring in-
surance on the lumber sheds was no different from the
purpose to apply for and to procure a like protection for
the warehouse on the right of way. Plaintiff had no
other insurance on the warehouse.

The facts and conclusions narrated are proper deduc-
tions from the evidence, though there is a conflict of testi-
mony in some respects. The evidence shows clearly that

the minds of the parties never met on an insurance contract excluding the warehouse. The inference is equally clear that both parties understood the right of way was to be included in the description of the land on which insured's property was situated. The omission of the right of way in drawing the policy was obviously a repetition of the mistake in the application. That the mistake was mutual is the logical and reasonable conclusion to be drawn from all the circumstances surrounding the negotiations, conditions and acts of the parties. The verdict is not only sustained by the evidence, but the evidence shows that the jury reached the correct conclusion. Not only that, the evidence showing the mistake and how it occurred was properly admitted.

The power of a court to correct a mutual mistake implies the admissibility of competent and necessary proof of such mistake.

There is no occasion for a separate suit in equity to correct a mutual mistake like that described and for a subsequent action at law on the reformed policy. Without the delay and the expense incident to two actions, equity and justice can be administered in a single suit. Considered as an action at law on the insurance contract actually made, the issue of mutual mistake was correctly determined by the jury in favor of plaintiff. Considered as a suit in equity to correct the mistake and to recover the insurance, the finding of the court should be the same as the verdict of the jury in favor of plaintiff, but the trial judge had authority, in the exercise of equity jurisdiction, to submit questions of fact to the jury. There was therefore no error in the overruling of the motion for a directed verdict in favor of defendant on the issue of a mutual mistake.

Another reason urged for a nonsuit is that the parties mutually construed the policy to exclude the warehouse as insured property. This point seems to be based on the fact that the written policy, after the fire, was changed, with the consent of both parties, to include the right of

Central Granaries Co. v. Nebraska L. M. Ins. Ass'n.

way as a part of the land on which insured property, including the warehouse, was situated. The real import of this fact is that the change related to the policy as it was erroneously reduced to writing, and not to the contract upon which the minds of the parties had met—a contract needing no construction but insuring plaintiff's warehouse.

Defendant invokes the doctrine that the contract of a mutual fire insurance company consists of the statute authorizing its creation, the articles of incorporation, the by-laws, the application for membership and the policy issued. In this connection it is argued that such an insurer can make no oral contract of insurance. If this is the law, a question not decided, it does not prevent oral negotiations for insurance, nor an oral understanding of the terms to be inserted in the application and in the written policy, nor prevent the parties from making an amicable correction of a mutual mistake in reducing those terms to writing, nor prevent the court from correcting such a mutual mistake, where one of the parties, though retaining the consideration for the contract actually made but not correctly reduced to writing, tries to take advantage of the mutual mistake. In these respects a mutual insurance company is governed by the same rules of equity and the same principles of law as all other corporations or individuals having the power to make contracts.

Another argument is directed to the proposition that the insurance is defeated by misstatements in the application. The evidence shows conclusively that plaintiff made no misstatement contributing to the loss or deceiving defendant to its injury. It follows that under the laws of this state plaintiff did not lose its insurance on account of misrepresentations. Rev. St. 1913, sec. 3187.

In view of the conclusions reached on the questions discussed, there is no prejudicial error in the giving or in the refusing of instructions, or elsewhere in the record.

FLANSBURG, J., not sitting.                    AFFIRMED.