WILLIAM KUBLI, Appellant, v. FIRST NATIONAL BANK OF PLEASANTVILLE, Appellee.

**BAILMENT:** Compensation—Nonallowable Presumption. A bank, in
1    accepting a bailment of securities for safe-keeping, will not be pre-
sumed to be a bailee for hire. There must be proof of direct or in-
direct benefit flowing to the bank by reason of such bailment.

**BAILMENT:** Degree of Care. A gratuitous bailee does not discharge
2    his duty to the bailor by exercising over the bailment that degree
of care which he exercises over his *own property,* unless that degree
is the degree which ordinarily prudent persons exercise over like
property under similar circumstances.

Headnote 1. 7 C. J. p. 643.    Headnote 2.    6 C. J. p. 1119.

*Appeal from Marion District Court.*—J. H. APPLEGATE, Judge.

OCTOBER 24, 1924.

REHEARING DENIED JANUARY 16, 1925.

ACTION at law, to recover damages by reason of the al-
leged negligence of the defendant bank to use reasonable care
while in the possession of certain United States bonds of the
value of $1,700, belonging to the plaintiff. Cause tried to a
jury, resulting in a verdict for defendant. Plaintiff appeals.—
*Reversed.*

*Guy A. Miller* and *W. H. Lyon,* for appellant.

*J. H. Johnson* and *J. A. Devitt,* for appellee.

DE GRAFF, J.—This action involves a contract of bailment.
Plaintiff alleged that the defendant bank bought certain liberty
bonds for him, and upon demand failed to deliver them, al-
though said bank had represented itself to be a safe depository;
and that the plaintiff, having paid for said bonds and being
denied delivery, has been damaged thereby.

The defendant in answer admitted that the plaintiff pur-

chased government bonds of the par value of $1,700, and that, at the time the plaintiff made the last payment, the bonds were delivered to the plaintiff, and that plaintiff requested that said bonds be left in the bank; that said bonds were kept by the defendant in its vaults in the same place in which the defendant and its officers kept their bonds; and that the same care was exercised with reference to caring for plaintiff's bonds as was exercised in caring for its own property; that no consideration of any kind or character was received by the bank for its services in keeping said bonds; and that plaintiff left said bonds with the bank, knowing that the defendant made no charge for its services; that the bonds were stolen and carried away on the night of January 13, 1920, by burglars, without any fault or negligence on the part of defendant. Defendant specifically denies any negligence on its part in the care and keeping of said bonds.

The facts are not in dispute, and we deem it unnecessary to make a detailed recital of the record, as the same may be found in the opinion of this court on the first appeal. See *Kubli v. First Nat. Bank*, 193 Iowa 833.

It is indisputably shown that the agreement between the appellant and the appellee constituted a bailment. The primary question, therefore, is whether the bailee exercised due care legally required of him under the circumstances. This is a jury question, to be determined under proper instructions applicable to the facts in evidence. Upon the former appeal of this case, it is said:

1. BAILMENT: compensation: nonallowable presumption.

"The inquiry in the case of a bailment involves consideration of the nature and character of the thing bailed; the measures ordinarily employed for its protection and preservation; the care which the ordinary or average person is accustomed to exercise in caring for his own property of like nature and value; the compensation or absence of compensation received or to be received for the service; and all the other material facts from which the impartial trier of facts may reach a just and fair answer to the inquiry whether the bailee has taken that care of the thing intrusted to him which may reasonably be demanded of him."

The foregoing statement is not subject to legal criticism.

Clearly, the bank is not an insurer. Clearly, the papers were left with the bank by reason of its special facilities to keep and preserve them safely. It is impracticable, if not impossible, to define by specific rule its duty in the premises; but it is not too exacting to require that the bank, under the circumstances, exercise that care which business men of prudence would exercise in keeping property of like value under similar circumstances. *Sherwood v. Home Sav. Bank,* 131 Iowa 528. It is not a question of good or bad faith on the part of the bailee. Motive or intent is not an essential ingredient. Nor is the rule subject to the interpretation that the care to be exercised is measured by the care which the bailee used in respect to his own property of like kind under like circumstances. It is said in Goddard's Outlines of Bailments and Carriers, Section 49:

"It has often been suggested that, if the bailee takes the same care of the bailed goods as of his own, he is free from liability. But one may take risks with his own that he has no right to take with another's property. * * * The question is not one of the care exercised by an individual, but by a class. Slight care is not that which an individual may bestow in a given case, but which men of a class are wont to bestow in such a case."

There is no dispute in the evidence in the instant case, bearing on the relation of the bailor and the bailee. There is an entire agreement on the facts creating the relationship between the parties. There is agreement as to the manner of the purchase of the bonds, and that the bailor did not pay a consideration *eo nomine* for the bailment. The question, then, is whether the bank omitted to do that which business men of prudence, under like circumstances, would do in keeping property of like value. The jury was told that, whether or not the bailment was gratuitous, the issue was not determined alone by the fact that there was no direct charge for the services rendered, as such services may be paid for indirectly: that is, that the party rendering the service might receive compensation indirectly by some advantage to its business. The rule stated in 3 Ruling Case Law 560 is as follows:

"A special bank deposit is gratuitous if it is accepted for the accommodation of the depositor, and without any undertak-

ing by him, express or implied, to pay or do anything as compensation or reward for keeping the deposit. And in case of special deposits, even of money in packages for safe-keeping, no consideration can be implied. The bank cannot use the deposit in its business, and no such profit or credit from the holding of the money can arise as will convert the bank into a bailee for hire or reward of any kind. There must be a compensation of some sort actually contemplated in the contract and bargained away by the bailor. The fact that the special depositor is also a general depositor in the bank is hardly sufficient, unless the retention of the general deposit account was stipulated for. So an incidental earning of fees for exchange or collection would not be a consideration, unless the depositor was obliged to allow it. Such benefits as are wholly contingent, and dependent on the pleasure of the depositor, cannot affect or determine the character of the bailment. The custom of the bank to accept special deposits does not absolutely demonstrate a general, still less a universal, receipt of consideration. There is no reason why a bank should not be allowed to accommodate a customer, or any number of customers, in this way, without raising any equity to estop it from showing the fact of such accommodation.''

The instant record is clear that the bank received no direct benefit or consideration. No charge was made by the bank against the appellant for this special deposit, and no evidence was introduced to prove that the bank received an indirect benefit, either from this deposit or from deposits of this nature, at the time the bailment was created. There being no evidence of either direct or indirect benefits, it is difficult to discover upon what basis the inference could be drawn that the bank was indirectly benefited. The bank received the deposit for the accommodation of the depositor; and, in the absence of other or different proof creating a conflict, the deposit must be considered what is termed ''gratuitous.'' To place it in any other class, there must have been an undertaking to pay or to do something, either expressly or impliedly, as compensation or reward for keeping and preserving the deposit. It is clear that the bank could not use this deposit in its business. It is clear that no profit or credit from the holding of such a deposit arose for the

benefit of the bank. It is clear that no compensation of any sort was actually contemplated in the original contract. Under such circumstances, a consideration or benefit cannot be implied. A bank is privileged to accommodate a customer or any number of customers, and we see no reason to submit to the jury the question whether the instant bailment was gratuitous or for hire. No prejudice resulted to the appellant in this particular, and what is said is for the consideration of a trial court upon the retrial of this cause.

The defendant is liable only for want of ordinary care. Upon the facts which appear, mere failure to return the bonds upon demand would not constitute a conversion. The loss of the bonds is sufficient reason for not returning 2. BAILMENT: degree of care. them, unless the loss occurred by the fault of the defendant. In this state, no degrees of negligence in cases of this character are recognized; and the division of "slight, ordinary, and great care," with the corresponding degrees of negligence, "slight, ordinary, and gross," no longer finds application in the definition of bailments as classified under the common law. See *Morrison v. Altig,* 157 Iowa 265. The question of liability is determined by the exercise of that care that should be exercised by men of prudence in keeping property of like value under like circumstances. The case, therefore, must be bottomed on the principle that a bailee either for hire or without compensation is liable for ordinary care, as measured by the rule heretofore stated; but, in the enumeration of the facts to be considered by the jury, it is proper for the court to instruct that, in determining whether ordinary care was exercised, the absence of compensation or reward for the services rendered by the bailee is an item of evidence to be taken into consideration in measuring the care required to be exercised by the defendant, together with all the other facts and circumstances of the case.

We now pause for a moment to consider the vital objection and criticism to one of the instructions given by the trial court. The last paragraph of Instruction 7 reads:

"If it was a gratuitous bailee of said bonds, then the question of whether it was negligent in the care of said bonds may be

determined and measured by the care it took of its own property or that of its officers of like kind and value."

This instruction, in legal effect, was the standard or yardstick in measuring the negligence on which the liability of the defendant was predicated. The jury could have understood it in no other way. The evidence disclosed that other property of like character belonging to the bank and also to some of its officers was kept in the same receptacle as the bonds of appellant. This instruction is not correct, as an abstract proposition of law. A bailee, under this rule, might fail to use what may be termed "the slightest degree of care," and still absolve itself from liability if it could be shown to the jury that he kept the property of the bailor in the manner in which he kept his own property, and this without regard to the care which business men of prudence would exercise in keeping such property under like or similar circumstances. There is quite a difference between that care exercised by business men of prudence in keeping property, and the care which anyone, whoever he may be, might use in keeping his own property. Nor is the error in this instruction cured by a correct instruction (No. 6) which in part read:

"In determining whether the defendant was negligent as charged, or was in the exercise of reasonable and ordinary care, it is proper for you to take into consideration, so far as said matters are disclosed by the evidence, the nature and character of the property involved; whether reasonably careful and prudent men, engaged in like business, under like circumstances, would ordinarily. have done in the matter of the care and keeping of said bonds."

It was competent for the jury to consider, as an item of evidence, the manner or method. adopted by the defendant in keeping its own bonds of like kind or value, or the bonds of the bank's officials; but the degree of care shown in this particular was not necessarily the legal standard or measure of care required of the defendant as bailee of appellant's property.

We cannot approve the instruction as given, and it is not

for this court to speculate as to which instruction was followed by the jury. For the reason stated, the cause is—*Reversed.*

ARTHUR, C. J., and STEVENS and VERMILION, JJ., concur.