ELCO SHOE MANUFACTURERS v. THATCHER.

1. SALES—BREACH OF WARRANTY—RESCISSION—PASSING OF TITLE IMMATERIAL IF RIGHT TO RESCIND EXISTS.
    In an action for the purchase price of shoes sold by sample and rejected by the buyer on the ground that they did not conform thereto, it is immaterial that the title passed on delivery of the shipment to the carrier if the buyer rightfully rejected them.[1]

2. SAME—RESCISSION—QUESTION FOR JURY.
    Whether the buyer rightfully rejected shoes purchased by sample because not conforming thereto was a question for the jury.[2]

3. SAME—ACCEPTANCE—QUESTION FOR JURY.
    Whether the acts of the buyer in reference to shoes pur-

---

[1]Sales, 35 Cyc. p. 308; [2]Id., 35 Cyc. p. 234.

chased by sample constituted an acceptance, barring his
right to later reject them, *held*, a question for the jury.[3]

4. SAME—CONTRACTS—RESCISSION—DUTY TO INSPECT.
    Where such shoes were in two shipments and the buyer
had, on inspection, rejected the first shipment, if he was
justified in so doing, he was justified in rejecting the
second shipment without inspection, since he was not
bound to accept the goods in installments, and, if the first
shipment did not conform to the contract, he was justified
in rescinding the whole contract.[4]

5. SAME — UNIFORM SALES ACT — BUYER PRESUMED BAILEE FOR
  SELLER ON BREACH OF CONTRACT OF SALE.
    Under the uniform sales act (3 Comp. Laws 1915, §
11900, subd. 5), where the seller refuses to accept a return
of goods, rejected by the buyer, it is the duty of the
buyer to store them for the seller; and in doing so he
does not waive his rejection, since the law assumes that
he is holding them as bailee for the seller.[5]

6. SAME—EVIDENCE—ADMISSIBILITY—SPECIAL DAMAGES.
    In such action, where the defense was that the sales had
been rescinded for breach of warranty, testimony that
said shoes were bought for a special holiday trade and
could not be purchased on the open market was admissible
as bearing on the question of special damages by way of
loss of profits.[6]

Error to Wayne; Webster (Arthur), J.    Submitted
January 6, 1925.    (Docket No. 13.)    Decided May 14,
1925.

Assumpsit by the Elco Shoe Manufacturers, Inc.,
against Harry C. Thatcher and Percy L. Lang, co-
partners as the Thatcher Shoe Stores, for goods sold
and delivered.    Judgment for plaintiff for less than
amount claimed.    It brings error.    Affirmed.

*Leopold D. Mayer,* for appellant.

*George W. Eyster* and *Harry M. Lau,* for appellees.

[3]Sales, 35 Cyc. p. 262; [4]Id., 35 Cyc. pp. 203, 224; [5]Id., 35 Cyc. p.
618; [6]Id., 35 Cyc. p. 472.

McDONALD, C. J.    This action is brought to recover the purchase price of an order of goods.    The plaintiff is a shoe manufacturer of the city of New York.    The defendants are retail shoe dealers in Detroit, doing business as copartners under the name Thatcher Shoe Stores.    The plaintiff, through its traveling salesman, sold to the defendants by sample on a single order, a quantity of ladies' fancy shoes. The shoes were shipped in two separate shipments. The first shipment, which was made on December 3, 1920, was examined on its arrival by the defendants, and rejected on the claim that the shoes were not according to sample.    The second shipment was made on the 6th of December, 1920, and was rejected without inspection.    The defendants undertook to return both shipments by delivering them to the express company and notifying plaintiff of their action by letter.    The plaintiff refused to accept a return of the goods and later, to prevent them from being sold for storage, the defendants took them from the express company and stored them.    The plaintiff claims that the shoes were according to sample, that they were accepted by the defendants and that therefore they are liable for the purchase price as per order, amounting to $768.75.    That in addition to this amount, there was $164.30 due on general account.    In defense the defendants claimed that the shoes were not bought for general stock, but for a special trade, that they were not according to sample and were unsalable, and by reason thereof they lost $276.50 in profits, which they sought to recoup against the demands of the plaintiff.    At the close of the proofs the plaintiff asked for a directed verdict, which was refused.    The jury allowed the defendants $15 damages for loss of profits and deducted that amount from the $164.30 (which was not disputed) and returned a verdict for the plaintiff in the sum of

$149.30.   The plaintiff made motions for a judgment *non obstante veredicto* and for a new trial, both of which were denied, the court filing reasons in writing therefor.   The plaintiff brings error.

Error is assigned on the refusal of the court to direct a verdict for the plaintiff.

Counsel's claim in this regard is stated in his brief as follows:

"The motion should have been granted for the reason that the goods were the defendants' from the time that they were put in the hands of the carrier at New York, having been shipped f. o. b. New York. * * * Thatcher's acts in reference to the goods, constituted acceptance as a matter of law, first by offering the goods for sale, thus doing acts in relation to them which is inconsistent with the ownership of the seller."

If defendants rightfully rejected the goods, it is immaterial that title passed on delivery to the carrier. If on their receipt it was found that they did not conform to the contract, they had a right to rescind the sale and return them.   This they did and whether they were right in doing so was a question of fact for the jury.   Whether their acts in reference to the goods constituted an acceptance was also a question for the jury.

It is further urged on behalf of the plaintiff that the defendants had no right to reject the second shipment without inspection.   As we have before stated, there were two shipments, but they were on one and the same order of goods.   The first shipment which was inspected and rejected comprised the larger portion of the order.   The second shipment was supposed to contain 21 pairs of shoes.   The plaintiff says that the contract was divisible, and that defendants could not reject the second shipment without inspection.   Mr. Thatcher testified in regard to the second shipment as follows:

"I could not accept 21 pairs out of an order, because it would be a broken lot.   When you order shoes you order a run of sizes and the great difficulty in the shoe business is to get rid of what you call broken lots or broken sizes.   21 pairs or 40 pairs would be no good to me, for it would be a broken lot right away.   I could not have kept them if they had been correct  *  *  *  I would not want to buy a lot of 21 pairs of shoes and offer them for sale, because the broken lines would be hard to get rid of."

The order was for a full run of sizes and unless the defendants got all they ordered they did not want any.   Having rejected the first shipment, if they did so rightfully, they were under no legal obligation to accept the second shipment, and if they were not obliged to take the second shipment it was not necessary that they should inspect it.   The buyer was not bound to accept these goods in installments.   The real question in the case was whether the goods conformed to the sample.   If they did the plaintiff was entitled to the full purchase price on both shipments. If they did not the defendants were not liable for either shipment.   The court submitted this question to the jury with proper instructions as to the rights and liabilities of the parties.

The defendants returned the shipments to the plaintiff, who refused to receive them.   They remained with the express company for five months, and until after this suit was begun.   The company notified the defendants that they would be sold for express charges.   The defendants took them back and stored them.   The plaintiff claims that in doing so they waived their former rejection and accepted the goods. We do not agree with this contention.   When the plaintiff refused a return of the goods, it was the duty of the defendants to store them and in doing so the law assumes that they were holding them as bailee for the plaintiff.   Uniform sales act (3 Comp. Laws 1915, § 11900).

Error is also assigned on the admission of evidence as to loss of profits and the charge of the court in relation thereto.   It was the defendants' claim that the goods were ordered for a special trade, that they were special shoes, that no substitute could be obtained in the market, and that they were entitled to special damages by way of loss of profits.   Mr. Thatcher testified that if the shoes were sold their profit would be $3.50 a pair, which would give them a total profit of $276.50, on the 79 pairs.   Of this amount the jury allowed them $15.   Mr. Thatcher also testified:

"These shoes were ordered in a hurry-up order, on a rush order especially for my Thanksgiving and holiday trade.   They were very much in demand, that is the reason I ordered them on a rush order.   *   *   *   There were customers waiting for these particular shoes.   *   *   *   I had inquiries for shoes of this particular description every day.   I had no other shoes in my place that I could have sold in lieu of these.   I could not get them at any other place within six weeks.   High grade shoes are not carried in stock."

Mr. Gabel, a retail shoe salesman in the defendants' store, testified that he had a list of eight or ten customers who were waiting to be called when these shoes were received, and that he did not call them because the shoes were not according to sample and were not salable to their customers.   If there was a breach of warranty under the circumstances, as appears in this case, the defendants were entitled to recover for their loss in profits.   We think the facts show with reasonable certainty that there was at least a loss of $15, the amount allowed by the jury.   We find no reversible error in the record.

The judgment is affirmed, with costs to the defendants.

CLARK, BIRD, SHARPE, MOORE, STEERE, FELLOWS, and WIEST, JJ., concurred.