EDWARD F. GARBARK, APPELLEE, V. BEN NEWMAN, DOING
BUSINESS AS NEWMAN MOTORS, ET AL., APPELLANTS.

51 N. W. 2d 315

Filed January 18, 1952.   No. 33049.

*Sterling F. Mutz,* for appellants.

*Max Kier* and *Charles Bocken,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

This is an action at law based upon rescission by appellee of a contract for the purchase by him from appellants of a used automobile on the ground of breach of express warranty of the condition of the machine, to recover a money judgment for the purchase price paid at the time of the transaction, and for the amount of expenditures made on account of the machine before appellee discovered the falsity of the representations made and that the warranty had been breached.

The district court, on application of appellants and over objection of appellee, transferred the case to the equity docket, denied a demand of appellee for a jury trial of the issues of the case, and heard and decided it without a jury.

The trial court made a general finding for appellee and against appellants, and special findings, in substance: That the claims of appellee as stated in the petition were true; that about August 13, 1949, he purchased from Ben Newman, doing business in Lincoln, Nebraska, as Newman Motors, one of the appellants, who was acting for an undisclosed principal, Roy Kipf, appellant, a 1941 Buick Roadmaster Sport Coupe for $800; that Newman during the negotiations and at the time of the sale at the place of business of Newman

Motors specifically stated and represented to appellee that the cylinder block of the automobile had not been cracked; that appellee believed, relied, and acted upon that statement and would not have made the purchase of the machine if that representation of the condition thereof had not been made to him by the seller; that the statement was false; that Newman knew or should have known it was untrue; that the representation as to the condition of the cylinder block of the car was material to the transaction and to the subject of the sale; that Kipf was the equitable owner of the car and had repaired it shortly before the sale of it to appellee; that Kipf was not a licensed dealer and he put the car in the name of Newman, an authorized used car dealer, for the purpose of having a sale of it made by Newman; that the certificate of title of the car at the time of the sale showed Newman to be the owner thereof; that the purchase price of the car was paid by appellee to Newman, but thereafter the appellants each participated therein and benefited therefrom; that appellee did not discover that the said representation of Newman was untrue until September 29, 1949; that he forthwith rescinded the sale, demanded of Newman the return of the amount appellee had paid for the car, and he offered to return to the situation the parties were in before the sale; that Newman stated he would not accept return of the car, would not return the amount paid by appellee to him, that he had acted only as agent for Kipf, and disclaimed all responsibility in the transaction; and that before appellee discovered that the representations made by Newman to induce the sale were false and untrue, appellee had expended on account of the car in repairs for and improvements thereof the reasonable amount of $127.62, and was entitled to recover from appellants the total sum of $995.62 upon appellee depositing with the clerk of the court a title certificate for the automobile showing title thereto in appellee free from encumbrance except a lien for

storage of the car after return of it was refused by Newman. The certificate of title was deposited as required, and judgment was rendered in accordance with the findings. This is an appeal from that judgment.

The character of this suit, an action at law, was not altered or changed by its transfer from the law docket to the equity docket of the trial court. It did not become an equity case. It was at its inception, continued to be, and is an action at law for the recovery of money. The significance of the transfer of this case to the equity docket of the court was a mere indication of the determination of the trial court to explore the issues of the case and decide them without the presence or assistance of a jury. Foltz v. Brakhage, 151 Neb. 216, 36 N. W. 2d 768.

There was no matter presented by the pleadings requiring or justifying the transfer of the case or any proceedings in it other or different than was appropriate and permissible in an action at law. The claim made in the answer of Roy Kipf that the terms of the guaranty of the automobile made at the time of the sale were only partly put in writing, that a part of the terms and conditions of the guaranty were omitted from the writing and existed only in spoken words, that the writing should be reformed to state all the agreement of guaranty made between the parties, and that this was essential to permit appellant to make his defense in the case, did not make it either mandatory or discretionary for the court to send this case to the equity docket and deny appellee a jury trial.

The modern system of practice does not make it necessary to secure a formal reformation of a written instrument, where it differs from the true agreement entered into between the parties, in order to enforce the instrument as it should have been made. Likewise it is now recognized that a defendant is entitled to avail himself of a defense based on the real contract between the parties, where the written instrument fails

to show the true agreement, without first having the instrument reformed. In Central Granaries Co. v. Nebraska L. M. Ins. Assn., 106 Neb. 80, 182 N. W. 582, the court said: "Without the delay and the expense incident to two actions, equity and justice can be administered in a single suit. Considered as an action at law on the insurance contract actually made, the issue of mutual mistake was correctly determined by the jury in favor of plaintiff. * * * There was therefore no error in the overruling of the motion for a directed verdict in favor of defendant on the issue of a mutual mistake." See, also, Annotation, 66 A. L. R. 763; Phenix Ins. Co. v. Gebhart, 32 Neb. 144, 49 N. W. 333; Omaha Fire Ins. Co. v. Dufek, 44 Neb. 241, 62 N. W. 465.

The order transferring the case and the order denying appellee a jury trial were each contrary to law, but the error was neutralized by the events of the litigation. Appellants cannot complain because the case was transferred from the law docket and tried by the court without a jury, because they requested the procedure adopted by the court. The success of appellee in the trial court prevents any complaint from him that he was denied a jury trial. However, the findings of the court in this case have the effect of a verdict of a jury and will not be disturbed unless they are clearly wrong. It is not the province of this court in reviewing the record in an action at law to resolve conflicts in or weigh the evidence. In testing the sufficiency of the evidence to sustain a verdict, admissible testimony tending to support the case of the successful party should be accepted as the truth. Foltz v. Brakhage, *supra;* James v. Hogan, 154 Neb. 306, 47 N. W. 2d 847.

Appellants contest the finding that Ben Newman stated and represented to appellee, at the time of the purchase by him of the automobile, that the cylinder block thereof had not been cracked; that appellee believed, relied, and acted upon the statement and would

not have bought the vehicle if that representation of its condition had not been made to him by the seller; and that the statement was false and it was material to the transaction and the subject thereof.

The parties to the negotiations for and the sale and purchase of the automobile were the appellee and Ben Newman, appellant. The pleadings of the parties assert that the representations by Newman of the condition and the warranty of the vehicle were partly oral and partly in writing. Appellee produced proof that appellant stated and represented during the negotiations and at the time of the sale that the block of the car had never been cracked; that the car was in perfect condition, except it did not have bumper guards, a speedometer, or windshield wipers; that these would be furnished and put on the car by appellant at his expense; and that he would pay one-half of the cost of repair parts and expense of installation of any required to correct any mechanical trouble or deficiency that occurred or developed in the car during 30 days from the date of the sale of it, and the remaining one-half thereof would be the liability of the appellee. The latter part of this is described in the record and noted on the motor vehicle invoice as "Thirty day guarantee 50/50." The quotation is the only part of the representations or warranty evidenced by writing.

There is evidence that appellee believed, relied, and acted upon the representations of Newman and especially his positive statement that the block of the car had not been cracked; that his statement in that regard was false; and the fact that the cylinder block had been cracked or broken affected and reduced the value of the car, made it unsalable and undesirable as security for loan purposes.

Appellant Newman agrees that he promised to equip the car with bumper guards, speedometer, and windshield wipers at his expense. He denies he made any statement about the condition of the cylinder block of the

car, or any other part of it. He asserts that the "Thirty day guarantee 50/50" was the only representation or warranty made to appellee. He says that the trial court erred in failing to find and determine that it was exclusive and since no defect in the car occurred or was discovered within 30 days of the date of the sale of it, except the battery failed and was replaced and the brakes required adjustment which was made, appellee had no cause of action against appellants. The finding of the district court that the condition of the car was misrepresented and that there had been a breach of warranty is sustained by evidence and is not contrary to law. Section 69-412, R. R. S. 1943, provides in part: "Any affirmation of fact * * * by the seller relating to the goods is an express warranty if the natural tendency of such affirmation * * * is to induce the buyer to purchase the goods, and if the buyer purchases the goods relying thereon." A positive statement or affirmation of a seller as to the condition of personal property made during negotiations for its sale indicating that he intended to be bound for the truth thereof, and which was so understood and relied upon by the other party to the negotiations, is an express warranty. McGuire v. Thompson, 152 Neb. 28, 40 N. W. 2d 237; Long v. Carpenter, 154 Neb. 862, 50 N. W. 2d 67. Appellee inquired of Newman if the block of the motor of the car had been cracked. His answer in the presence of appellee and a third party was a direct positive statement that it had not been cracked. He emphasized this statement with repetitious and extreme profanity apparently as added assurance that any doubt of appellee in that regard would be wholly dissipated.

The evidence was sufficient to support the finding that the representation as to the condition of the block of the car was material to the contract of sale. It was that an automobile after the block has been cracked is not good security for a loan; that this car would not have been available as collateral for a loan if the defect in

the block had been known; and that such a defect greatly reduces the value of a car and, if it is made known, the car is unsalable. Reduction in the value of this car was estimated at $250. In Cooper v. Marr, 149 Neb. 211, 30 N. W. 2d 563, it is said: "Where, * * * a purchaser receives what he actually purchased, and bases his right to rescind on some false representation as to its quality, condition, or matter affecting its value, he must show that such representation was material, and that he was misled thereby to his injury and damage."

If a misrepresentation is likely to affect the conduct of a reasonable person with reference to a transaction with another person, it is generally material to the contract, and if a misrepresentation is material to the transaction entered into by a person deceived thereby, it is assumed, in the absence of facts showing the contrary, that it was induced by the representation. Pasko v. Trela, 153 Neb. 759, 46 N. W. 2d 139.

Appellants contend that the break in the cylinder block was plainly visible and could have been seen by appellee if he had looked at that part of the car; that he could not close his eyes to an obvious condition and have legal relief because of its existence. The defect in the block was not easily found or seen. It was below the exhaust manifold, had existed for a considerable time, and was rusted. To see it, one had to get down and look under the manifold. The car had been badly used, had been in an accident, and could only be moved with great difficulty by its power. One of the appellants repaired it at an expense of about $350. He cleaned the motor and did not discover the crack in the block. A buyer of a vehicle is not required to assume dishonesty of the seller in his statements concerning the subject of the sale, and make an independent investigation. A person is justified in relying upon a representation made to him in all cases if it is a positive statement of fact and if an investigation would be re-

quired to discover the truth. Sic v. Loup River Power District, 136 Neb. 506, 286 N. W. 700; Hamaker v. Middaugh, 134 Neb. 440, 278 N. W. 849.

The postulate of appellants that appellee must be denied any relief in this case because he did not discover the untruthfulness of the representation of Newman as to the condition of the cylinder block and did not offer to rescind the contract within 30 days of the sale is without merit. The warranty resulting from that affirmation of a fact material to the contract was not within the limitation made applicable to the so-called "Thirty day guarantee 50/50." It is required that a purchaser of a chattel who desires to rescind a contract for fraud or breach of warranty must act within a reasonable time considering all the circumstances. The question as to what is a reasonable time in this regard cannot be answered by reference only to a period of time. McGuire v. Thompson, *supra*. In this case appellee expressed his desire and intention to rescind the contract the same day he discovered the breach of the warranty of the condition of the cylinder block. Greater alertness was impossible.

Appellants contend appellee did not effectively rescind the contract of sale or show a sufficient waiver of a formal rescission thereof. Roy Kipf, one of the appellants, says that appellee did not give notice to him that appellee desired or intended to or did rescind the contract of sale, and that he did not tender or offer to return the car to appellant or to put him in the situation he was at the time the contract was made. He also says that he does not know what transpired between appellee and Newman after appellee discovered the breach of warranty, but whatever was done or said is unimportant because Newman was only an agent of Kipf for the sale of the car, and the agency had been wholly completed and terminated before that time. Ben Newman, one of the appellants, denies that there was a rescission of the contract and pleads that he was only an agent of

his co-appellant in making a sale of the car, that he fully performed and completed the agency, and was discharged therefrom on August 13, 1949.

There is substantial proof that Newman did not disclose to appellee that he was claiming to act only as agent for Roy Kipf in the negotiations and sale of the car until after appellee discovered on September 29, 1949, that the representation made by Newman as to its condition was false. The car was at the place of business of Newman during the negotiations and at the time of the sale. He made an offer to sell it and fixed the price. When the parties agreed, Newman signed the invoice as owner of the car. The purchase price was paid to him. The certificate of title to the car was in his name and he furnished to appellee a certificate of title. The fact that Newman was attempting to act for an undisclosed principal is immaterial in this case.

An agent who fails to disclose the fact of his agency and represents himself as principal inducing another to deal with him as such is liable and may be treated as principal for all purposes until the fact of his agency is made known. A person dealing with an agent of an undisclosed principal may, after disclosure, sue either the principal or agent, or both. Lincoln Joint Stock Land Bank v. Bexten, 125 Neb. 310, 250 N. W. 84; Jackson v. McNatt, 4 Neb. Unoff. 55, 93 N. W. 425; Dresher v. Becker, 88 Neb. 619, 130 N. W. 275; Saco Dairy Co. v. Norton, 140 Me. 204, 35 A. 2d 857, 150 A. L. R. 1299; Restatement, Agency, § 186, p. 431, § 322, p. 714.

It was not competent or permissible for either of the appellants to attempt to show that Newman was not the absolute and sole owner of the automobile. The certificate of title of it was in his name and was conclusive of his ownership under the circumstances of this case, and appellee was justified in treating him as the owner thereof. § 60-105, R. S. Supp., 1949. See, also, Loyal's Auto Exchange, Inc. v. Munch, 153 Neb. 628, 45 N. W. 2d 913.

Generally a rescission of a contract of sale of a chattel must be made by the purchaser giving notice to the vendor of his election to rescind and return or offer to return the property to the place where it was received by the purchaser, and an offer to place the parties in the situation they were at the time the contract was made as nearly as the circumstances will permit. Parks State Bank v. Fernholz, 111 Neb. 669, 197 N. W. 387; Sherrill v. Coad, 92 Neb. 406, 138 N. W. 567; Mundt v. Simpkins, 81 Neb. 1, 115 N. W. 325, 129 Am. S. R. 670; Linch v. Nebraska Buick Automobile Co., 120 Neb. 819, 235 N. W. 456; James v. Hogan, *supra.*

However, the law does not require vain things, and a formal tender of property is not required if it appears that if made it would have been futile. Star v. Watkins, 78 Neb. 610, 111 N. W. 363; Lapham v. Bossemeyer Bros., 5 Neb. Unoff. 343, 98 N. W. 699; Bundy v. Wills, 88 Neb. 554, 130 N. W. 273, Ann. Cas. 1912B 900; Phelps v. Shuck, 107 Neb. 490, 186 N. W. 313; Mundt v. Simpkins, *supra;* 52 Am. Jur., Tender, § 4, p. 216. See, also, Ross v. First American Ins. Co., 125 Neb. 329, 250 N. W. 75; Cox v. Cox, 124 Neb. 706, 247 N. W. 898; Nelson v. State, 121 Neb. 658, 238 N. W. 110; Hippodrome Amusement Co. v. Redick, 109 Neb. 390, 191 N. W. 317. After Newman had positively stated he would not accept a return of the car and would not refund the purchase price paid to him, it was evident that any further offer or tender by appellee would not have been accepted. Thereafter appellee was not required to take the car to the place of business of Newman and tender it to him.

The first information and knowledge appellee had that the cylinder block of the car had been broken was on September 29, 1949. His wife obtained the information first and verified the truth of it by conferring with the mechanic who discovered the crack while working on the car. She discussed the situation with appellee and she for and on his behalf and with his approval talked with Newman on the afternoon of that day. She told

him the car had a cracked block, the source of her information, that she wanted to return the car, wanted Newman to take the car back, and return the money paid for it. "I told him that we wanted our money back on it." Newman said he would not take the car back and that he would not refund or return the money. He said he would have to refer her to Kipf; that Kipf would have to take the car back; that it was his and did not belong to Newman; that he, Newman, did not have anything to do with it; that it was not his car; and that he could not do a thing about it. Newman continued this position at all times thereafter until this litigation resulted. A person who has given a reason for his conduct and decision concerning a matter involved in a controversy cannot, after litigation has begun, change his position and place or explain his conduct upon another or different consideration. From v. General American Life Ins. Co., 132 Neb. 731, 273 N. W. 36. The finding that the contract of sale had been regularly and sufficiently rescinded and that appellee was entitled to judgment against the appellants for the amount of the purchase price with interest at legal rate from September 29, 1949, is sustained by the proof and is not inconsistent with applicable law.

The automobile, after Newman refused to accept it back and declared he would not return the purchase price to appellee, was placed and kept in storage in the Hartsough Motor Company garage and was there at the time judgment herein was rendered. The storage charge was $15 a month and was unpaid. This was established as fair and reasonable. The court required appellee to and he did deposit with the clerk of the district court a certificate of title of the car showing title thereto in him free of encumbrance, except the storage lien, for the use and benefit of appellants upon satisfaction of the judgment. The legality of this procedure is challenged by appellants.

The Uniform Sales Act provides: "(5) Where the

buyer is entitled to rescind the sale and elects to do so, if the seller refuses to accept an offer of the buyer to return the goods, the buyer shall thereafter be deemed to hold the goods as bailee for the seller, but subject to a lien to secure the repayment of any portion of the price which has been paid * * *." § 69-469, R. R. S. 1943. In Elco Shoe Manufacturers v. Thatcher, 231 Mich. 138, 203 N. W. 669, it is said: "The defendants (buyers) returned the shipments to the plaintiff, (seller) who refused to receive them. * * * The defendants took them back and stored them. * * * When the plaintiff refused a return of the goods, it was the duty of the defendants to store them and in doing so the law assumes that they were holding them as bailee for the plaintiff. Uniform sales act (3 Comp. Laws 1915, § 11900)." See, also, Ryder & Brown Co. v. E. Lissberger Co., 300 Mass. 438, 15 N. E. 2d 441, 118 A. L. R. 521; Levy v. Chonavitz, 163 N. Y. S. 658.

Generally a bailee is charged with the amount and kind of care of the subject of the bailment that would be exercised by an ordinarily prudent person in the same or similar circumstances. The observance of ordinary care should be the conduct in every case by a bailee. Peet v. Roth Hotel Co., 191 Minn. 151, 253 N. W. 546; Kubli v. First Nat. Bank, 199 Iowa 194, 200 N. W. 434; 8 C. J. S., Bailments, § 26, p. 261.

Appellee was not a voluntary or gratuitous bailee. His status and responsibility as a bailee was placed upon him by the wrongful refusal of Newman to accept return of the automobile and the law. Appellee was then charged with doing the reasonable and prudent thing to preserve and protect the car from loss, damage, or unusual deterioration. Anything less would subject him to a liability. Prudent persons protect their cars by shielding them from the elements and exposure to the depredation of evil disposed persons toward the property of others. Parking this car in the open would not have been justified. Appellee would then have been subject

to the hazard of liability for damage to or loss of the car. The statement of this court in another case is appropriate here. "When Neville found himself involuntarily in possession of these goods, we think he might preserve them; and for the reasonable worth of the care and preservation of the goods until they were removed the owners were liable." Moline, Milburn & Stoddard Co. v. Neville, 52 Neb. 574, 72 N. W. 854. See, also, Crancer Co. v. Combs, 95 Neb. 403, 145 N. W. 863.

Gant v. Cutting-Larson Co., 110 Misc. 484, 181 N. Y. S. 581, makes reference to the Uniform Sales Act and comments: "The plaintiff, having offered to return the automobile and the offer having been refused, became the bailee for hire of the property and is entitled to the usual charges of bailment or storage after notice to the defendant." In that case, the court further said: "The statute therefore seems to be contrary to the principle, if such there be, as claimed by the defendant, that one cannot make himself the creditor of another without the consent of the latter * * * for the relation of bailor and bailee seems to be created by the statute, regardless of the intention of the parties or their consent or want of consent. * * * In the present case the plaintiff tendered the automobile to the defendant, who refused to receive it, and plaintiff thereupon, * * * stored the automobile in a garage and insured it against the perils of theft and fire and notified the defendant of such action and that the defendant would be held liable for the expense incurred. In so doing the plaintiff sought to make the defendant's loss as light as possible, consistent with the exercise of due care and the proper regard for the right of the defendant in the automobile. Under the circumstances it would seem that the defendant is chargeable with the amount expended for storage and insurance." The record justifies the procedure in this case that required appellants to take the car subject to the charge for its storage after the return of it had been refused by Newman.

Appellee improved the car during the period from its purchase to the time of his discovery that its condition had been misrepresented. The amount he expended for parts, installation thereof, and labor occasioned by the improvements, was $114.77. The appropriateness of these or the reasonableness of the charge for them is not contested. In Mundt v. Simpkins, *supra,* it was determined that: "As a general rule a party who counterclaims for damages for breach of a contract will be held to have affirmed it, and cannot be heard to assert its nonexistence because of its recission (rescission) * * *. An exception * * * may exist where one expends money or material in the improvement of property before discovering the fraud by which he was induced to purchase it, or where the purchase is made on a warranty of its fitness for a prescribed use, and repairs are required to be made before the article can be tested and its fitness for the use ascertained. In such cases the purchaser may rescind the contract of sale and recover the reasonable cost of improving the property or of repairs made thereon."

These expenditures constitute special damages within the Uniform Sales Act. Section 69-470, R. R. S. 1943, contains the following: "Nothing in this act shall affect the right of the buyer or the seller to recover * * * special damages in any case where by law * * * special damages may be recoverable, * * *." This is not in conflict and is not limited or affected by subsection (2) of section 69-469, R. R. S. 1943, that: "When the buyer has claimed and been granted a remedy in any one of these ways, no other remedy can thereafter be granted." The immediate preceding quoted provision relates to and recognizes the doctrine of election of remedies that when two contemporary inconsistent remedies exist, the election and pursuit of one prevents subsequent resort to the other. James v. Hogan, *supra.*

It has not been the rule in this state that only general damages may be recovered for breach of warranty,

but recovery of proximate special damages has been recognized. Aultman & Co. v. Stout, 15 Neb. 586, 19 N. W. 464; Burr v. Redhead, Norton, Lathrop Co., 52 Neb. 617, 72 N. W. 1058; Long v. Carpenter, *supra;* Yoder v. Nu-Enamel Corporation, 145 F. 2d 420.

The purpose and effect of the provision of the Uniform Sales Act that the buyer or seller may recover special damages in any case where the law permits the recovery of such damages is to permit the recovery of special damages without regard to whether the transaction to which they are incidental has been rescinded or affirmed. Russo v. Hochschild, Kohn & Co., Inc., 184 Md. 462, 41 A. 2d 600, 157 A. L. R. 1070; Uniform Laws Annotated, 1A, Sales, § 70, p. 406.

The motion of appellants for an order dismissing this case should be, and it is denied.

The district court determined and allowed as expenditures made on the car by appellee the sum of $127.62. This is $12.85 in excess of the amount shown by the proof. The judgment of the district court of $995.62 should be, and it is reduced to $982.77, and, as reduced, the judgment should be, and is in all things affirmed.

MOTION TO DISMISS DENIED.

JUDGMENT AFFIRMED AS MODIFIED.

CHAPPELL, J., not participating.